MELVILLE V. SMITH, PROSECUTOR, v. TOWNSHIP OF MIDDLE, CAPE MAY COUNTY, RESPONDENT.

Argued November 6, 1918—Decided February 18, 1919.

1. The Local Option act (*Pamph. L.* 1918, *p.* 14) is not unconstitutional as containing an improper delegation of legislative power, by requiring a special election to be held on petition by thirty per. cent. of the qualified voters as · distinguished from referendum at a general election on petition of over twenty and less than thirty per cent.
2. Nor is said act unconstitutional by reason of such provision, as establishing an illusory classification of municipalities in violation of the clause relating to special laws regulating the internal affairs of towns and counties. Constitution, article 4, section 7, paragraph 11.

On rule to show cause why *certiorari* should not issue to review special election under the Local Option law.

Before Justices PARKER and MINTURN.

For the prosecutor, *Charles A. Bonnell* and *Harry Heher*.

For the respondent, *Harry W. Gill*.

The opinion of the court was delivered by

PARKER, J. Apart from questions already decided by us in the recent case of *Michaelson* v. *Wall Township, ante p.* 72, and now decided adversely to prosecutor on the authority of that case, the only point now raised that need be specially noticed is the further constitutional one, that the Local Option act (*Pamph. L.* 1918, *p.* 14) purports to confer an unconstitutional delegation of legislative power, by placing it within the power of ten per cent. of the voters of the municipal unit, to require a special election on the question of prohibition, instead of leaving the determination of this question to the vote at the next *general* election. The argument seems to be, that conceding the propriety in a con-

stitutional sense of submitting the question at a general election, if twenty per cent. of the voters sign the petition, this is as far as the legislature can go, and when it provides that if thirty per cent. or more sign, the election shall be special, it goes too far, by delegating power unconstitutionally, and also by creating an unconstitutional classification of municipalities, *i. e.*, those in which a special election is held, and those in which the general election suffices.

On the first branch of the argument the cases of *Rutten* v. *Paterson,* 73 *N. J. L.* 467, and *Gilhooly* v. *Elizabeth,* 66 *Id.* 484, are relied on. Neither is in point. What was condemned in those decisions was not the calling of a popular election to determine whether ward lines should be changed, upon the application of a small minority of citizens, but the attempt to empower such a minority actually to effect the change by a mere petition making it mandatory on certain officials to proceed. In the case at bar, a substantial minority can call for an election on the question of prohibition, at which all citizens are entitled to vote thereon. This is, of course, the time-worn and standard method of referendum. It is that laid down in the Civil Service act (*Pamph. L.* 1908, *p.* 235; *Comp. Stat., pp.* 3795, 3806) by a petition of five hundred voters in first and second-class counties and cities, and two hundred and fifty voters in third-class counties and cities, and five per cent. of the electorate in all other municipalities; and this plan was approved in *Booth* v. *McGuinness,* 78 *N. J. L.* 346. In this act the legislature seems to have thought it sufficient to have the matter decided at a general election. When the Walsh act was passed the legislature considered the referendum, when ordered, important enough to be voted at a special election in all cases (*Pamph. L.* 1911, *pp.* 463, 481; *Pamph. L.* 1915, *p.* 12); and this on the petition of twenty per cent. of the voters. In neither case has the constitutionality of the provision been successfully attacked. In *Paul* v. *Gloucester,* 50 *N. J. L.* 585, the act examined was chapter 110 of the laws of 1888 (*Pamph. L., p.* 142), and this provided that on the petition of ten per cent. of the voters of the county there should be a hearing before the judges of the Circuit Court,

as to the sufficiency of the petition, very much like the council hearing provided under the act now being considered; and this was upheld by the Court of Errors and Appeals.

We have pointed out the Civil Service act, on the one hand, and the Walsh act, on the other, as indicating that it is the legislature and not the petitioners which determines the question of general or special election. What it has said is this: If at least twenty per cent. petition, there shall be a referendum election; we think, if as many as thirty per cent. petition, the election should be special, because the evident sentiment in favor of prohibition is strong enough to justify early action; but if less than thirty per cent. petition, we see no reason of putting the municipality to that expense. A similar argument, which we undertook to answer in *Michaelson* v. *Wall, supra,* was that the legislature had delegated to citizens the power of imposing greatly increased punishment for violation of the Liquor law, because that law if adopted carried those increased penalties. The answer was that the penalties were incidental to the act, like the penalties for violation of the Civil Service act.

As to the claim that there is created an unconstitutional classification of municipalities, we can see no substance in it. The act lays down a uniform working rule for all municipalities of every statutory class, providing for a vote by referendum at the general election on compliance with certain conditions, and a vote at a special election on compliance with others. The distinction is based on a thoroughly rational general ground, which is the apparent strength of popular sentiment in each several community; precisely the same ground as that determinative of the question of election or no election. If this creates classes of municipalities, and we think it does not, they are at least entirely legitimate and rational classes and in no sense illusory.

The *allocatur* will be denied.