VICTOR L. WOODHULL, WILLIAM E. WIDERKEHR, RICH-ARD L. STARK, ARTHUR G. TOOMER, Jr., RICHARD J. LYONS AND HAROLD W. WATSON, PLAINTIFFS-RE-SPONDENTS, v. J. RAYMOND MANAHAN AND E. MARCO STIRONE, DEFENDANTS-APPELLANTS, AND DAVID E. NOONAN, RUSSELL J. NONCARROW AND ANTHONY J. CATTANO, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued August 10, 1964—Decided October 20, 1964.

158

Before Judges LEONARD, CONKLIN and PASHMAN.

*Mr. Myron J. Bromberg* argued the cause for appellant Manahan (*Messrs. Porzio, Bromberg & Newman,* attorneys).

*Mr. Alvin Weiss* argued the cause for appellant Stirone (*Messrs. Riker, Danzig, Scherer & Brown,* attorneys).

*Mr. Henry M. Hoyt* argued the cause for respondents (*Messrs. Corbin, Hoyt & Watson,* attorneys).

The opinion of the court was delivered by
PASHMAN, J. S. C. (temporarily assigned). This is an action to construe and determine the relative powers of the

mayor and common council of the Town of Morristown in the appointments of a town attorney and committees of the council. The common council consists of the mayor (defendant Manahan) and eight councilmen. Five of the councilmen are the plaintiffs in this action and defendants Noonan, Noncarrow and Cattano are the remaining three.

Defendant Stirone was appointed town attorney for a one-year term commencing January 1, 1963. The annual organizational meeting of the common council was held on January 1, 1964. At that meeting plaintiff Woodhull moved for the appointment of plaintiff Harold Watson as town attorney for a one-year term commencing January 1, 1964. The "motion" was carried by a 5–4 vote. Mayor Manahan filed a written veto of the appointment pursuant to *R. S.* 40:133–2.

On January 4, 1964 Watson took the oath of office as town attorney. On January 7, 1964 plaintiffs filed an action in lieu of prerogative writs to declare Watson the town attorney and to remove defendant Stirone from holding over as town attorney. At a subsequent meeting Woodhull moved to override the mayor's veto. The motion was carried 5–4, but Mayor Manahan stated that in the absence of a two-thirds vote his decision would stand.

In the second count of the complaint plaintiffs sought relief against defendant Manahan concerning his committee appointments made at the January 1 meeting. Plaintiff Woodhull was recognized at the meeting and moved that Manahan's appointments be rescinded and another slate of committees be appointed. The mayor declared Woodhull out of order. Plaintiffs seek judgment directing Manahan to entertain Woodhull's motion and to declare that in the event a majority of the board approves the motion, the persons named in the motion shall be considered the duly appointed committee members.

The trial court granted plaintiffs' motion for summary judgment and held that the mayor did not have the power to veto Watson's appointment. It also held that the mayor should have entertained the motion concerning committee

appointments and that a vote of the majority of the board could override the mayor's selection.

The Town of Morristown is organized under a charter enacted by the Legislature in 1865 (*L.* 1865, *c.* 455, *p.* 819). It has been modified by various amendments and by general statutes of the State. The charter never contained a provision for veto power in the mayor. A veto was first given to the mayor in 1932 by virtue of *R. S.* 40:133-1 *et seq.*

The starting point for discussion must be the statutory scheme relating to towns. *R. S.* 40:125–30 provides that a town attorney "shall be appointed by the council for the term of one year, and shall perform such duties as the council shall by ordinance prescribe." The statute relating to the mayor's veto power is as follows:

*R. S.* 40:133-1:

"Every ordinance or resolution adopted by the common council shall, before it takes effect, be presented to the mayor duly certified by the town clerk."

*R. S.* 40:133-2:

"If the mayor approves the ordinance or resolution he shall sign it. If he does not approve it he shall, within ten days after its receipt by him, return it to and file it with the clerk, together with his objections, and the council shall at its next meeting thereafter enter the objections at length on its minutes and proceed to reconsider the ordinance or resolution."

*R. S.* 40:133-3:

"If two-thirds of all the members of the council agree to pass the ordinance or resolution it shall take effect, but in such case the vote shall be taken by yeas and nays and entered in full on the minutes of the council."

*R. S.* 40:133-4:

"If the ordinance or resolution shall not be returned within ten days, as provided in section 40:133-2 of this title, it shall take effect in like manner as if the mayor had signed it."

■■ There is little question that the mayor has a veto power over ordinances and resolutions under this statutory scheme. See *Brookes v. Jones,* 13 *N. J. Misc.* 780, 781, 180 *A.*

162

550 (*Sup. Ct.* 1935). The question is whether the intent of the 1932 act is to give the mayor the power to veto the appointment of a town attorney and whether such appointment constitutes a "resolution" within the meaning of that act.

The trial court relied principally on three cases: *Haight v. Love,* 39 *N. J. L.* 14 (*Sup. Ct.* 1876), affirmed 39 *N. J. L.* 476 (*E. & A.* 1877) ; *McDermott v. Miller,* 45 *N. J. L.* 251 (*Sup. Ct.* 1883), and *Wilson v. Potts,* 120 *N. J. L.* 131 (*Sup. Ct.* 1938).

In *Haight* the mayor was given veto power by the following statute :

"The mayor shall have power to veto the action of any board within ten days thereafter ; and all ordinances and resolutions shall be certified and forwarded to the mayor."

The court held that the word "action" could not be construed to apply to the appointment of a city collector by the board of finance. The court stated that the veto was limited to those classes of actions which are directed to be certified to the mayor, *i. e.,* resolutions and ordinances. At *page* 20 the court was of the opinion that the appointment of an officer was not a "resolution." It said that "while, indeed, an officer may be chosen by resolution, such a mode is rarely adopted. Usually a vote by ballot or *viva voce,* indicates the choice."

In the *McDermott* case the mayor was given the statutory power to veto ordinances or resolutions. The court held, in reliance upon *Haight,* that the terms "ordinance" and "resolution" are not appropriate to the appointment of a city officer.

*Wilson v. Potts, supra,* involved the City of Morristown. There the court held that the mayor had the power to veto the appointment of a corporation counsel. The town charter allowed the board of aldermen to appoint certain officials deemed necessary and proper and who "shall hold their offices during the pleasure of common council." One Wilson was appointed as corporation counsel for the term of five years. The court held that the action in question was a legislative

act because the board of aldermen did two things—they created the office of corporation counsel for a period of five years and appointed a prosecutor to that office. But the office of corporation counsel was actually created by ordinance of Morristown adopted May 20, 1927. The action of the board which was contested in *Wilson* was the appointment itself (for five years). The court believed that the *Haight* case only applied to non-legislative acts and held that the action here was legislative.

The trial judge in the case *sub judice* was of the opinion that the court in *Wilson* implied that the mayor did not have the veto power as to the appointment of officers. But the language of *Wilson* is the most recent on this subject and the implication is not factual or realistic. At *p.* 132, Justice Trenchard said:

"Prosecutor properly concedes the power of the Mayor to veto a resolution or ordinance, *Brookes v. Jones*, 13 *N. J. Misc.* 780, but insists that such power did not extend to an appointment. He contends that the action of the board taken on January 1, 1937, was an appointment. *We think it was, and also think it was something more than that.* It was an appointment of C. Franklin Wilson as corporation counsel for the term of five years. We have pointed out that by the charter the town council is given power to appoint officers of the town, who shall hold their offices during the pleasure of the council. And the defendants contend that since under the statutory scheme a new board goes into existence on January 1st of each year, and since the statutory authority grants the board permission to appoint officers during the pleasure of the board, any attempt by the board to create an office for the term of five years is illegal and void, citing *Trowbridge v. Newark*, 46 *N. J. L.* 140, and *Skladzien v. Board of Education of Bayonne*, 12 *N. J. Misc.* 602. All of this may possibly be true, but we do not see fit to determine this case on that precise ground.

"The question whether or not the action in question was void is not the prime issue before the court. The question is, had the Mayor legal power to veto this action? The prosecutor refers to an ordinance of the town adopted May 20, 1927, by which the office of corporation counsel was created and its term fixed for five years. There would seem to be no more legal sanction to be found in section 7 of the town charter for the ordinance of 1927 than there is for the action of the board taken January 1, 1937.

"But however that may be, the pertinent legal question seems to remain, what was the import of the action taken January 1, 1937? We believe that it was an attempt to do two things simultaneously,

namely, to create the office of corporation counsel for a period of five years, and to appoint the prosecutor to that office. This, then, was not an administrative function, but was rather a legislative function, and so should be interpreted by the same rules which govern courts in the construction of legislative acts. *Bradshaw v. City of Camden*, 39 *N. J. L.* 416.

"We deem it unnecessary in the present case to further pursue the defendant's contention that the Legislature by the town charter did not grant to the governing body the right to, create the office of corporation counsel for a term of five years; *for even if the board had a right to create such an office for such a term, such action would be a legislative act, and therefore would be subject to the veto power of the Mayor.*

"In *Haight v. Love*, 39 *N. J. L.* 14 (relied on by the prosecutor) and in *Erwin v. Jersey City*, 60 *Id.* 141, the court denied the right of the Mayor to veto an appointment to office, on the ground that the right to veto pertained only to legislative acts. Since we think the action in question was a legislative act, it follows that the power of the mayor to veto it existed.

The result is that the writ will be dismissed, with costs." (at *pp.* 132–3 ; emphasis supplied)

■ The terms "resolution" and "ordinance" are defined in *R. S.* 40 :49–1. However, the definitions are expressly made applicable to *Subtitle* 3 ("Municipalities Generally"). They are not applicable to *R. S.* 40 :133 *et seq.*

■■ The appellants cite several cases for the proposition that a municipal governing body may only act by ordinance or resolution. See *Dey v. Mayor, etc., of Jersey City*, 19 *N. J. Eq.* 412 (*Ch.* 1869), and *Pierson v. Dover*, 61 *N. J. L.* 404 (*Sup. Ct.* 1898). More recent cases have reiterated the rule. In *Keyport Sewerage Authority v. Granata*, 52 *N. J. Super.* 76, 83 (*Law Div.* 1958), the court was of the opinion that a borough council :

"* * * can hardly act in any manner other than by ordinance or resolution or something equivalent thereto. Every act must be by a vote of the members present, and whether it is called an order, direction, or motion, it still is a resolution because it must be resolved on upon a motion by some member. *Town of Irvington v. Ollemar*, 128 *N. J. Eq.* 402 (*Ch.* 1940), affirmed *Irvington Nat. Bank v. Geiger*, 131 *N. J. Eq.* 189 (*E. & A.* 1942)."

Generally, an ordinance is a legislative act, whereas a resolution is ordinarily ministerial in character. 5 *McQuillin,*

*Municipal Corporations* (*3d ed.* 1949), § 15.02, *pp.* 52–53. The author adds, at *section* 15.08, *p.* 74:

"It has been said that there is no substantial difference between a motion and a resolution, that the terms are practically synonymous, and that they are the same."

Bylaw 16 of the town provides as follows:

"Any appointment of officers shall be made *viva voce* vote of the members of the common council unless this By-Law shall be suspended by the unanimous consent of the Council when such appointment may be made by ballot and the votes of a majority of the members of Council shall be necessary to a choice."

There are affidavits on file to the effect that the procedure prescribed by this bylaw was the way appointments had been made in Morristown. Respondents rely on the cases which say that an appointment in this manner is not a resolution subject to the veto power of the mayor. This court cannot agree. As we have stated, the more recent and acceptable view is that any type of non-legislative action is to be considered a resolution except for a situation where there may be merely a parliamentary question. In *Pierson v. Dover, supra,* the court held that the requirement of a city charter cannot be evaded or a mayor deprived of his veto by calling what is resolved to be done a motion and not a resolution. After reviewing the cases decided in the 30 intervening years since *Dey, supra,* the court in *Pierson* said that:

"Although the word 'resolution' or 'resolved' was not used by the common council in taking this proceeding, it is nonetheless a proceeding resolved upon by the council, by whatever name it may be called.
"The requirement of the charter cannot be evaded in a matter of such importance, nor the mayor deprived of his prerogative by a mere change of words, by calling what is resolved to be done a motion and not a resolution. The proceeding certified is, in substance and effect, a resolution of council, and it is void, and must be set aside, because it was not submitted to the mayor for his approval."
(at *p.* 406)

In *Town of Irvington v. Ollemar*, 128 *N. J. Eq.* 402 (*Ch.* 1940), affirmed *sub nom. Irvington National Bank v. Geiger*, 131 *N. J. Eq.* 189 (*E. & A.* 1942), the court said:

"The principal contention of the Town is that the apportionment was not made by resolution. The thought behind this contention seems to be that a resolution must read, 'Be it resolved,' etc., but this is not the law. A body, such as the Town Commission, 'must act when assembled at stated or special meetings, and organized with a president to conduct, and a clerk to record, its proceedings. *Such body can hardly act in any other manner than by ordinance or resolution.* Every act must be by a vote of the members present; and, whether it is called an order, direction or determination, it is still a resolution, because it must be resolved on, upon a motion made by some member.' *Dey v. Jersey City*, 19 *N. J. Eq.* 412. All through our numerous cases dealing with municipal action, it will be seen *that a board or body can act only by ordinance or resolution; these are the alternative methods.* Any action of the body which does not rise to the dignity of an ordinance, is a resolution. \* \* \*" (128 *N. J. Eq.*, at *pp.* 405–6; emphasis added)

*Cf. Krieger v. Jersey City*, 27 *N. J.* 535, 542 (1958), where our Supreme Court recognized by implication that officers are appointed by resolution.

■ New Jersey does not stand alone in reaching the result that a resolution in effect encompasses all actions of the municipal body other than ordinances. New Jersey adheres to the view taken by many of its sister states. The Supreme Court of Pennsylvania, for example, has stated that:

"In substance, a resolution is merely the formal expression of the will of the majority of an official body. \* \* \* [t]here is no difference between a motion and a resolution \* \* \* [i]t is the substance of the corporate act, not the form, that governs."

*Commonwealth ex rel. Fox v. Chace*, 403 *Pa.* 117, 168 *A. 2d* 569, 572 (1961); see also *Baker v. Lake City Sewer District*, 30 *Wash. 2d* 510, 191 *P. 2d* 844 (*Sup. Ct.* 1948).

In *Allen v. Wise*, 204 *Ga.* 415, 50 *S. E. 2d* 69, 71 (*Sup. Ct.* 1948), the mayor had the statutory power to veto ordinances and resolutions. The city council attempted to discharge the city controller by a "motion" which the mayor vetoed. The

court, in upholding the veto, was quick to point out that there is no difference between a resolution and a motion.

In the case *sub judice* the attempt to avoid the mayor's veto by calling plaintiff Woodhull's nomination of plaintiff Watson to be town attorney a "motion" instead of a resolution, is ineffectual to deprive the mayor of his right of veto and is not sanctioned by the cases.

We believe that the situation in this case is distinguishable from those cases relied upon by the trial judge. In *Haight v. Love, supra,* the appointment of the city collector was made by the board of finance and not, as here, by the central governing body of the town. The inference in *Wilson v. Potts, supra,* which was relied upon by the trial judge, was just an implication by the court deciding that case. It must be considered mere *dictum,* and in any event is not binding upon this court. The case of *Erwin v. Jersey City,* 60 *N. J. L.* 141 (*E. & A.* 1897), relied upon to some extent by the trial judge, is almost identical to the facts in *Haight v. Love, supra.* As in *Haight,* the appointment of plaintiff as corporation attorney was made by the board of finance. Thus, *Erwin* is distinguishable for the same reasons as the *Haight* case. In *McDermott v. Miller, supra,* the court stressed the point that under Hoboken's form of government the mayor was not a member of the common council. Thus, it was held that he should not have the power to defeat the will of the majority of the council. In *Brookes v. Jones, supra,* Justice Bodine said:

"We can see no objection that the mayor has both a vote and a veto. He can perform different services, and after all the only limits upon the legislative power to control the affairs of a municipality are to be found in the Constitution." (13 *N. J. Misc.,* at *p.* 781)

Thus, the *McDermott* case, *supra,* is distinguishable from the case *sub judice* because under the Morristown form of government, the mayor does vote with the council. The case of *Prezlak v. Padrone,* 67 *N. J. Super.* 95 (*Law Div.* 1961), cited by respondents, is distinguishable from the present case. There the court held that the filling of a vacancy by a municipal

body was not a legislative act evidenced by an ordinance or a resolution. But that case concerned a vacancy in the municipal governing body itself and not a separate municipal office.

Of the cases relied on by the trial judge, three (*Haight, McDermott* and *Erwin*) were decided before the turn of the century. Only *Wilson v. Potts, supra,* was determined after the passage of the 1932 act, which specifically included resolutions, and that case held the appointment to be a legislative act. Resolutions by their very nature are not legislative acts. If it were the intention of the Legislature in drafting *R. S.* 40 :133–1 *et seq.,* to limit the veto power to legislative acts, it would not have included the term "resolutions."

The judgment of the trial court must be reversed as to the first issue. We hold that under the facts in this case defendant Manahan, as mayor, has the power to veto the appointment of a town attorney. Plaintiff Watson does not hold said office. Defendant Stirone must be considered a holdover as town attorney. However, he has since been appointed a member of the Morris County Board of Taxation. Under the holding in *Jones v. MacDonald,* 33 *N. J.* 132 (1960), a councilman cannot hold membership on the county board of taxation. Respondents request that we exercise our original jurisdiction under *R. R.* 1 :5–4(a) and *R. R.* 2 :5 to complete the determination of this case by holding that Stirone cannot hold over as town attorney. We shall exercise our original jurisdiction. We find that the two positions held by defendant Stirone are incompatible under the principles enunciated in *Jones.* Stirone shall have 30 days after the issuance of the mandate to elect which position he desires to retain.

The second question presented is whether the common council can rescind the committee appointments of the mayor. Paragraph 5 of the bylaws provides that:

"All committees shall be appointed by the Mayor, unless otherwise ordered by the common council, and at the request of any member of the council, or the solicitation of the clerk, the report of any committee shall be submitted in writing."

The trial judge held that the council had the right to act and "otherwise order" concerning committee appointments. Defendant Manahan says that this may not be done unless there is compliance with bylaw 19 which provides: "No standing rule or order or rule of the Council shall be suspended, altered or amended," unless there is a special meeting in which the alteration, suspension or amendment is adopted at the next meeting by a majority of the members or there is a temporary suspension by a concurrence of two-thirds of the members.

The motion to rescind the appointments was made after the mayor acted. It is difficult to see how bylaw 19 is applicable since there was no alteration or amendment of anything. However, we believe that the trial judge erred in holding that the council had the power under bylaw 5 to nullify the mayor's committee appointments by majority vote, and that the mayor could not veto such a determination.

Bylaw 5 is almost 100 years old. The final grant of power is prescribed by state statutes, under well settled legal principles. Consistent with our prior holding, the statutory scheme in *R. S.* 40:133 *et seq.* must govern. In matters concerning appointments the common council may only act by ordinance or resolution. *R. S.* 40:133–1; *Pierson v. Dover, supra; Town of Irvington v. Ollemar, supra.* We hold that bylaw 5 is superseded by *R. S.* 40:133 *et seq.* wherever inconsistent. Even assuming passage of a valid ordinance or resolution naming a slate of committee appointments contrary to that of the mayor's, the latter would still have the power to veto same by virtue of *R. S.* 40:133–2.

The third question presented is whether the mayor's ruling on a point of order is subject to appeal to the council by one of its members. On this point we agree with the trial court that it is appealable. As we said, a mere parliamentary question is not to be considered a resolution. Bylaw 4 of the town gives the mayor the power to decide questions of order, subject to an appeal to the common council by any member. There is no conflict between the statute and the bylaw in this

situation. Further, the bylaw allows a majority vote of the council to overrule the mayor's decision.

Remanded for entry of judgment consistent with the above opinion.