110 N.J. Super. 200 (1970)
264 A.2d 762
WILLIAM J. McLAUGHLIN, JR., RUTH E. McLAUGHLIN, GEORGE J. SCHNEIDER, ELIZABETH I. SCHNEIDER, DORSEY CALHOUN, HELGA CALHOUN, CHARLES P. PEEK, III, GAIL PEEK, RAYMOND J. DILL, CAROLINE DILL, CHARLES M. SMITH, CAROL SMITH, CLARENCE W. HAND, AND RACHEL HAND, PLAINTIFFS,
v.
THE CITY OF MILLVILLE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; WILLIAM SHAW, FRANK HOFFMAN, STEVEN ROMANIK, SAUL POLKOWITZ, BEING MEMBERS OF THE BOARD OF COMMISSIONERS OF THE SAID CITY OF MILLVILLE; LANDIS SEWERAGE AUTHORITY, A PUBLIC BODY, POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY; CUMBERLAND MALL ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY; AND CONRAD A. WALTMAN, MILLVILLE CITY CLERK, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 27, 1970.
*203 Mr. J. Peter Davidow for plaintiffs.
Mr. Edward S. Miller, City Solicitor, for defendants City of Millville, the named commissioners, and Conrad A. Waltman, city clerk.
Mr. Jordan D. Lippner for defendant Landis Sewerage Authority.
Mr. Paul R. Porreca for defendant Cumberland Mall Associates, Inc. (Messrs Porreca, Okoniewski & Lisi, attorneys).
HORN, J.S.C.
Plaintiff brings this action in lieu of prerogative writs, R. 4:69, in order to compel officers of the City of Millville to submit ordinance 30-1969 to public referendum. N.J.S.A. 40:74-5. Motions for summary judgment were made by all parties and the matter is presently before the court on the basis of the complaint, affidavits and briefs.
Ordinance 30-1969 authorized Millville to enter into a contract with the Landis Sewerage Authority (Landis) whereby the Millville sewerage utility would process effluent originating from within a portion of the neighboring City of Vineland.
*204 In 1966 Millville was directed by the State Board of Health to expand its sewerage processing facilities. At that time the Millville plant was functioning at between 90% and 100% of its two million gallon capacity. Relying upon the advice of its consulting engineers, Millville elected to erect a new plant with a five million gallon capacity. It was projected that this plant would satisfy the city's needs until the year 2000.
In 1967 Millville declared its sewer department to be a self-liquidating utility. Therefore, a bond ordinance was adopted by the board of commissioners authorizing the sale of $2,260,000 of bonds. The new plant is presently under construction.
Sometime in 1969 discussions began concerning use of a portion of the new plant to treat effluent from Vineland which would otherwise have been processed by defendant Landis Sewerage Authority. Specifically to be treated was sewerage produced by a shopping center complex which defendant Cumberland Mall Associates (Mall) intend to build on a tract of land on the Vineland side of the boundary with Millville. It is contemplated that this shopping center will include at least four major department stores, a motion picture theater and some 100 "satellite" specialty shops. It is estimated that Cumberland Mall will generate 25,725 gallons of effluent per day, or a fraction of 1% of the Millville plant's total capacity. However, Landis does not have the facilities to treat the projected effluent.
In order to effect such an arrangement, representatives of Landis, Cumberland Mall, and Millville entered into negotiations culminating in the presentation of a resolution to the Millville board of commissioners dated November 3, 1969. This resolution, No. 5590, authorized the execution of a contract between Millville and Landis. The resolution was adopted by a vote of four in favor, with Mayor Rulon Peek opposed. Mayor Peek then instructed the city solicitor, Edward S. Miller, to submit a legal opinion as to the authority for submitting the resolution for his signature. The solicitor *205 advised that instead of the resolution an ordinance embodying the subject matter of the resolution would be prepared. This ordinance, No. 30-1969, was introduced for first reading at the commission meeting of November 18, 1969. Attached thereto was a proposed agreement of lease. The contract provided that Millville would lease Landis its sewage facilities for a period of ten years and that Landis would pay as rent a sum equal to 75% of the sewer charges that Landis would collect from Cumberland Mall. Later a revised agreement was substituted, incerasing the time required for a written notice renewing the agreement.
On December 2, 1969, upon second reading, the ordinance was adopted by a vote of three in favor, with Mayor Peek again opposed. One commissioner was absent. All parties acknowledge that the passage of this ordinance was surrounded by great controversy. Petitions in opposition to its enactment had been submitted to the city commission. Vocal opposition appeared at all commission meetings at which the issue was considered. Open letters have appeared in local newspapers.
Continued protests were heard after passage of the ordinance. On December 11, 1969, 41 petitions containing 1,886 signatures protesting the passage of ordinance 30-1969 were filed with the Milville municipal clerk. On December 12, 1969 an additional 15 petitions containing 293 signatures were filed. It was the apparent intention of those who circulated these petitions to have them constitute the basis of a remonstrance, as provided for in N.J.S.A. 40:74-5. That statute states:
If within ten days after the final passage of an ordinance, except ordinances authorizing an improvement or the incurring of an indebted ness, other than for current expenses, where other requirements are made by law, a petition signed by electors of the municipality equal in number to at least fifteen per cent of the entire vote cast at the last preceding general municipal election protesting against the passage of such ordinance, be presented to the board, it shall thereupon be suspended from going into operation and the board of commissioners shall reconsider the ordinance. If the ordinance is not entirely repealed, *206 the board shall submit it, in the manner provided in paragraph "b" of section 40:74-14 and sections 40:74-15 to 40:74-18 of this title, to the vote of the electors of the municipality, either at the general election or at a special municipal election to be called for that purpose, and such ordinance shall not become operative unless a majority of the qualified electors voting on the ordinance shall vote in favor thereof.
The form of such petitions is governed by N.J.S.A. 40:74-10 through 14. Each petition must contain an attestation that all signatures contained thereon are genuine. N.J.S.A. 40:74-11. The municipal clerk is then charged with examining the petitions and determining whether they contain the signatures of the requisite number of qualified voters. N.J.S.A. 40:74-12. If defects are found to exist, the statute mandates the municipal clerk to return the petitions to those who have submitted them. Ten days are permitted for the correction of any deficiency. Id.
In the case at bar the petitions submitted were examined and initially found deficient for not having contained the required verification. N.J.S.A. 40:74-11. Accordingly, they were returned to those who had submitted them. N.J.S.A. 40:74-12. On December 22, 1969 properly executed affidavits for all but two petitions were submitted. The amended documents were then examined by the municipal clerk and found to contain 1703 valid signatures. Additionally, the clerk certified that the total number of votes cast in the last municipal election was 7,542 and "that the number of valid signatures of electors required to make the petition effective is 1,131." However, upon advice of the solicitor, the municipal clerk has refused to submit the matter for referendum. It is that refusal which is being tested by this action brought in lieu of prerogative writs.
Plaintiffs argue that N.J.S.A. 40:74-5 must be read as mandatory and that the municipality is now obligated to conduct a referendum on the merit of the ordinance. Defendants counter with the proposition that the terms of the statute are not mandatory. They found this argument upon the reasoning of this court in Snow v. Bell, 105 N.J. *207 Super. 484 (Ch. Div. 1969). Specifically, they contend that that case held that the referendum statute was inapplicable to ordinances adopted to implement an improvement ordinance by providing for rules and regulations and rate schedules. Alternatively, defendants assert that the passage of ordinance 30-1969 had been made superfluous by the previous enactment of resolution 5590. Because the statute refers only to ordinances and not to resolutions defendants further urge that no referendum is required.
Snow v. Bell, addressed itself to whether the Borough of Avalon was required to submit to referendum an ordinance regulating the use of water, fixing metered rates and setting out regulations with respect to the use of water. Plaintiffs contended that the provisions of N.J.S.A. 40:74-5 mandated the suspension of the operation of the ordinance, so that the borough commissioners were obliged either to repeal the ordinance or to submit it to the voters by means of a referendum. The court recognized plaintiffs' real objective was to obtain a decrease in the metered water rates secured by ordinance No. 395. They agreed that the improvement in the water system was needed for reasons of public health, safety and welfare. Thus, in effect, plaintiffs in Snow v. Bell, sought to have the electorate determine the ultimate rates to be charged by securing or requiring referenda until the governing body reduced the rates to meet their approval. The court held that such referenda were not contemplated by N.J.S.A. 40:74-5 and that the provisions of ordinance No. 395 were part and parcel of the general improvement theretofore ordained. The court stated:
I believe that the provisions of ordinance No. 395 are part and parcel of the general improvement theretofore ordained. The rules and regulations which were promulgated by the ordinance under attack, as well as the metered rates fixed for service to consumers, are provisions implementing the basic improvement.
This is a pragmatic approach as well. In view of the fact that the increased supply of water may not be utilized unless meaningful rates are required to be paid by consumers, it seems hardly likely that the *208 Legislature intended the possible frustration of the sound purposes of the improvement ordinance by permitting the effective transfer of the rate-fixing power from the governing body to the electorate, especially in a situation where the electorate had no right to a referendum initially.
Accordingly, plaintiffs are not entitled to an injunction since the petition filed with the borough was ineffective to suspend the operation of ordinance No. 395. * * * [at 491-492; emphasis added]
The present case is distinguishable from Snow v. Bell. This action concerns an ordinance embodying subject matter which could not have been reasonably anticipated by the electorate when the initial improvement ordinance was adopted. It does not implement the initial improvement ordinance. It does not relate to the authorization of an improvement or to the fixing of a rate. The issue that would be submitted to the voters would be whether a portion of the operating capacity of Millville's self-liquidating utility should be used to process effluent from another municipality. The court foresees a legitimate public debate on this issue. Proponents could argue that Millville's processing plant can easily handle the increased load and that the revenue collected will be available to retire capital debt. Opponents may argue that Millville is unnecessarily relinquishing control of a portion of its plant's capacity and that as Southern New Jersey becomes more developed this added capacity may become needed to process Millville effluent.
Defendants also argue that the passage of ordinance 30-1969 had been made superfluous by the prior enactment of resolution 5590. Were the argument accepted it would follow that the referendum would be obviated because the remonstrance procedures of N.J.S.A. 40:74-5 attach only to ordinances. N.J.S.A. 40:49-1 defines the terms "ordinance" and "resolution":
The term "ordinance" when used in this subtitle means and includes any act or regulation of the governing body of any municipality required to be reduced to writing and read at more than one meeting thereof and published.
*209 The term "resolution" when used in this subtitle means and includes any act or regulation of the governing body of any municipality required to be reduced to writing, but which may be finally passed at the meeting at which it is introduced.
N.J.S.A. 40:49-2 defines the procedures for the passage of ordinances.
It is frequently stated that the term "ordinance" encompasses matters which are legislative in character, while "resolutions" refer to administrative or procedural matters. O'Keefe v. Dunn, 89 N.J. Super. 383, 388 (Law Div. 1965), aff'd 47 N.J. 210 (1966); Woodhull v. Manahan, 85 N.J. Super. 157, 164 (App. Div. 1964), aff'd 43 N.J. 445 (1964); 5 McQuillin Municipal Corporations, § 16.42, at 232 (1969). Actions by governing bodies which do not rise to the dignity of ordinances are termed "resolutions." In certain instances, the statutes require that a proceeding be instituted by the enactment of an ordinance. In such instances the legislative purpose cannot be effected by resolution; the latter wanting the solemnities of an ordinance; is not regarded as a legal equivalent. Chasis v. Tumulty, 8 N.J. 147, 154 (1951); Paterson v. Barnet, 46 N.J.L. 62 (Sup. Ct. 1884).
Where the statutes fail to indicate whether the power should be exercised by ordinance or resolution it may be done by either means. Krieger v. Jersey City, 27 N.J. 535, 542 (1958); Howard v. Mayor, etc., of Paterson, 6 N.J. 373, 377 (1951); Fraser v. Teaneck Tp., 1 N.J. 505, 507 (1949); City of Burlington v. Dennison, 42 N.J.L. 165, 166 (E. & A. 1880). I need not, however, determine whether the use of the word "ordinance" in N.J.S.A. 40:74-5 should be construed to include an action taken by resolution.
The statutes do not specify a particular procedure for effecting the legislative purpose of the ordinance and resolution under review. Accordingly, either the form of an ordinance or that of a resolution could have been employed. The facts disclose that both procedures were used. *210 Initially, a resolution was carried; subsequently, an ordinance was enacted. It is not for this court to inquire why both were invoked. Regardless of what may have occurred prior to its passage, once ordinance 30-1969 was enacted the provisions of N.J.S.A. 40:74-5 became operative. Upon compliance with N.J.S.A. 40:74-10 through 14, the Millville governing body became obligated to suspend the ordinance from going into operation and to reconsider its passage. Since upon reconsideration the ordinance was not entirely repealed, the board became obligated to submit it to a vote of the electors of the municipality.
To excuse Millville from conducting a referendum because of the earlier passage of a resolution which alone would have sufficed would cause an unjust result. The doctrine of equitable estoppel guards against such situations.
"It is of the essence of equitable estoppel that one is precluded from taking a position inconsistent with that previously assumed and intended to influence the conduct of another, if such repudiation `would not be responsive to the demands of justice and good conscience,' in that it would effect an unjust result as regards the latter." [Gitomer v. United States Casualty Co., 140 N.J. Eq. 531, 536 (Ch. 1947)].
Municipal corporations are ordinarily subject to the doctrine of estoppel to serve the demands of right, reason and justice, at least where the invocation of the rule would not hinder or prejudice essential governmental functions. Vogt v. Belmar, 14 N.J. 195, 205 (1954). Accordingly, I find Millville estopped from refusing to conduct a referendum by relying upon the earlier passage of the resolution.
To hold otherwise would subvert the purpose of N.J.S.A. 40:74-5. Through this statute the Legislature, within defined bounds, granted the electorate the right to review actions taken by municipal governing bodies. Defendants have not challenged the constitutional propriety of this statute. Nor does the court find that such a challenge could be sustained. Courts have in other circumstances permitted the Legislature to authorize local voters to review *211 questions of public concern. Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199 (1960); Smith v. Middle Tp., 92 N.J.L. 300 (Sup. Ct. 1919). Similarly, it has been held that, while the Legislature cannot delegate its power to enact laws, it may provide that whether a law shall be operative may be submitted to general referendum. Noonan v. Freeholders of Hudson, 51 N.J.L. 454 (Sup. Ct. 1889), aff'd 52 N.J.L. 398 (E. & A. 1890). Indeed, this statute embodies a most proper form of participatory democracy and public policy supports this view. Cf. Wyatt v. Clark, 299 P.2d 799 (Okla. Sup. Ct. 1956).
I have not considered the relief sought concerning alleged alterations made in the petitions submitted to the municipal clerk.
Accordingly, I will sign an order enjoining Millville from carrying into effect the terms of resolution 5590 and compelling the municipal clerk to submit to the eligible electorate the issue of the passage of ordinance 30-1969.
No costs.