740 So.2d 48 (1999)
DONMAR CORPORATION II, a Florida corporation, d/b/a Crystal Building Maintenance, Appellant,
v.
CITY OF WEST PALM BEACH, a Florida municipal corporation, and Sunshine Cleaning Systems Inc., a Florida corporation, Appellees.
No. 98-1317.
District Court of Appeal of Florida, Fourth District.
March 31, 1999.
Rehearing Denied September 24, 1999.
Daniel S. Rosenbaum and Karen E. Roselli of the Law Office of Becker & Poliakoff, P.A., West Palm Beach, for appellants.
Patrick N. Brown and Claudia M. McKenna, West Palm Beach, for City of West Palm Beach, and Anthony J. Carriuolo of the Law Office of Eckert, Seamans, Cherin & Mellott, L.C., for Sunshine Cleaning Systems.
FARMER, J.
Donmar Corporation appeals a final summary judgment in favor of the City of West Palm Beach and Sunshine Cleaning Systems. The parties agree that the essential facts should be deemed undisputed and that the underlying question is purely legal. We affirm.
In April 1997, the City advertised a request seeking bids for janitorial services for its police administration building and parking garage. After receiving all proposals, the City rated Sunshine first, receiving 87 points, and Donmar second, receiving 81 points. The City Commission awarded the contract to Sunshine and, at the same time, by way of commission resolution authorized the Mayor and the City Clerk to execute a formal contract with Sunshine. But Donmar filed a bid protest, alleging that Sunshine erroneously received points for being a minority business enterprise when it was not. As a result of Donmar's protest, the City Commission changed its mind and voted to award the contract to Donmar. But the Mayor vetoed the Commission's change of mind, and upon consideration the Commission failed to override the veto.
Donmar sued, contending that the Mayor exceeded her power because the veto was unauthorized by City Charter. At a hearing on a motion for summary judgment, the parties agreed there was no issue of material fact and that the court could enter final judgment on the issue of the Mayor's veto power. The trial judge determined that the veto was within the Mayor's powers and entered summary judgment in favor of the City and Sunshine, stating the following conclusions of law:
"1. Article II of the Charter of the city (`Charter') is entitled `Legislative.' The legislative body of the City is the City Commission.

*49 "2. Section 3.01 of the Charter provides that the chief executive officer of the City is the Mayor.
"3. The first paragraph of Section 3.02 of the Charter grants the Mayor the power to veto `legislation,' as follows:
The Mayor shall have the power to veto legislation within forty-eight (48) hours after the adjournment of any City Commission meeting. Ordinances or resolutions vetoed by the Mayor shall be considered by the City Commission at its next regularly scheduled meeting, and at that meeting the City Commission may pass the ordinance or resolution over the Mayor's veto by a two-thirds majority vote of the entire Commission. The effective date of an ordinance passed over the Mayor's veto shall not be less than fifteen (15) days after the final passage, which shall be considered to be the date on which the City Commission originally passed the ordinance or resolution and it shall then become law notwithstanding the objections of the Mayor.
"4. `Legislation,' as used in the first paragraph of Section 3.02, refers to the acts of the legislative body of the City, i.e., the City Commission.
"5. The first paragraph of Section 3.02 of the Charter further provides that acts of "legislation" which the Mayor has the power to veto are ordinances and resolutions.
"6. The legislative body acts by ordinance or resolution. Any action of the legislative body which is not an ordinance- whether a direction, motion, order or formal written resolution- is a "resolution," and is therefore "legislation." See Woodhull v. Manahan, [85 N.J.Super. 157,] 204 A.2d 212 (N.J.Super.[A.D.] 1964) and City of Ludowici v. Brown, [249 Ga. 857,] 295 S.E.[2d] Section 90 (Ga. 1982).
"7. The second paragraph of Section 3.02 provides as follows:
Within 48 hours of the adoption of an ordinance or resolution appropriating money for the use of City government, the Mayor may disapprove all or portion of an appropriation. Any appropriations disapproved or reduced shall be void to such disapproval or reduction unless restored to the ordinance or resolution by a two-thirds majority vote of the entire City Commission at its next regularly scheduled meeting.
This paragraph of Section 3.02 of the Charter gives the Mayor the power to veto all or a portion of ordinances and resolutions appropriating money for the use of the City government, i.e., a "line item" veto. The line item veto power relating to appropriations does not apply to the Commission action selecting Donmar.
"8. The third paragraph of Section 3.02 of the Charter describes the limitations on the Mayor's veto power, as follows:
The Mayor shall not have the power to veto emergency ordinances or any enactments relating to the emergency appropriations or emergency borrowing.
"9. The City Commission's initial selection of Sunshine as the party with whom contract negotiations should commence resulted in a resolution (Resolution 288-97) approving the contract dated August 11, 1997. Thus, the City Commission's selection of parties with whom the City proposes to contract is the type of Commission action which is expressly subject to the Mayor's veto power under Section 3.02 of the Charter.
"10. Likewise, the City Commission's subsequent decision to reject Sunshine (and in effect rescind Resolution No. 288-97) and select Donmar as the proposer with whom to commence contract negotiations under the RFP, was an act of legislation of the legislative body of the City which was expressly subject to the Mayor's veto power under Section 3.02 of the Charter.

*50 "11. Pursuant to the first paragraph of Section 3.02 of the Charter, the Mayor had the power to veto the Commission action selecting Donmar."
The judgment entered by the trial court so declared the rights of the parties under the provisions of the Charter thus construed. This appeal follows.
We agree with the trial judge's reading of the Mayor's veto powers under its Charter. Section 3.02 of the West Palm Beach Charter provides:
"The Mayor shall have the power to veto legislation within forty-eight (48) hours after the adjournment of any City Commission meeting. Ordinances or resolutions vetoed by the Mayor shall be considered by the City Commission at its next regularly scheduled meeting, and at that meeting the City Commission may pass the ordinance or resolution over the Mayor's veto by a two-thirds majority vote of the entire Commission....
"The Mayor shall not have the power to veto emergency ordinances or any enactments relating to the emergency appropriations or emergency borrowing."
Under the plain language of this charter provision, the Mayor of the City of West Palm Beach is empowered to veto all ordinances and resolutions, passed by the City Commission, except for "emergency ordinances or any enactments relating to the emergency appropriations or emergency borrowing." The commission action in this instance was indisputably not an emergency provision relating to appropriations or borrowing. Hence it fell squarely within the veto power described in section 3.02.
We reject Donmar's contention that putting aside the exception for emergency appropriations or borrowingthe Mayor has been granted the power to veto only some ordinances or resolutions relating to legislation, but not all such ordinances or resolutions. We do not understand the text of this charter provision to draw any distinctions between what has traditionally been viewed as legislative action by a local legislative body and what has traditionally been viewed as executive or administrative action by a local legislative body. Thus even assuming that the selection of a contractor to supply services to the city could be deemed administrative or executive action, as opposed to legislative action under the city's charter and ordinances, it is clear from the text of section 3.02 that either kind of commission action in the form of an ordinance or resolution can be vetoed by the mayor.[1]
There is nothing in state law that inhibits the citizens of West Palm Beach from setting up such a veto power for its mayor. Section 166.041 defines the terms "ordinance" and "resolution," but the definition creates no conflict with the mayor's veto power.[2]
*51 We easily reject Donmar's parade of horribles of hypothetical results from a mayor's veto of commission action in a zoning matter or other kinds of action affected by constitutional and statutory provisions governing the rights of individuals and the power of municipal government. The obvious short answer is that this case does not raise that issue and does not involve the commission purporting to sit in a quasi judicial matter, whether of zoning or permitting or otherwise. The matter at hand is purely and simply the selection of the best possible contracting party for janitorial services. If in awarding such a contract the action of either the city commission or the mayor in vetoing such action should violate some discrete constitutional or statutory provision, the affected parties may resort to their judicial remedies for relief. But that is not the case here.
AFFIRMED.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] As we noted recently in Brooks v. Watchtower Bible & Tract Society of Florida Inc., 706 So.2d 85, 87-88 (Fla. 4th DCA 1998):

"The Charter does not define `ordinances,' but the Code describes when an ordinance must be passed. In section 1-3, the Code states:
`Except as may be otherwise specifically required by law or provided hereby ... enactment of a resolution shall be the sole method of action by the city commission in ... providing for an expenditure of funds in excess of five hundred dollars ($500.00); and in all other instances the city commission may act by resolution or by motion; provided, in each instance in which a method is specifically prescribed hereby for the taking of action by the city commission, the method so prescribed shall be followed.'" [e.o.]
The charter does not prescribe the mode of action for approving contracts of the kind involved in this dispute, so the commission may act by resolution. The veto power in section 3.02 gives the mayor the power to veto virtually all resolutions, so long as they do not involve emergency appropriations or borrowing.
[2] See § 166.041(1), Fla. Stat. (1997) ("Ordinance" means an official legislative action of a governing body, which action is a regulation of general and permanent nature and enforceable as local law. "Resolution" means an expression of a governing body concerning matters of administration, an expression of a temporary character, or a provision for the disposition of a particular item of the administrative business of the governing body).