STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN M. SAULNIER, DEFENDANT-RESPONDENT.

Argued April 2, 1973—Decided June 19, 1973.

200

*Mr. Michael R. Perle,* Deputy Attorney General, argued the cause for the appellant (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

*Mr. Emerson L. Darnell* argued the cause for the respondent (*Messrs. Darnell and Scott,* attorneys).

The opinion of the Court was delivered by

JACOBS, J. The defendant was found by the Burlington County Court to be a disorderly person for having possessed small quantities of marihuana and hashish in violation of *N. J. S. A.* 24:21-20(a)(3). He received a suspended jail term of three months and was placed on probation for a year with direction that he pay a fine of $250 in installments through the probation department. He appealed to the Appellate Division and that court reversed, in an unreported opinion which concluded that the County Court "was without jurisdiction to try the defendant as a disorderly person and that the guilty finding and sentence thereafter imposed were illegal under the case of *State v. McGrath,* 17 *N. J.* 41 (1954)." We granted certification (62 *N. J.* 260 (1973)) for the purpose of passing on whether *McGrath,* which has long been the subject of question, should not now be replaced by a more suitable judicial approach. See Knowlton, "Criminal Law and Procedure," 10 *Rutgers L. Rev.* 97, 98–99 (1955); *State Bar Committee Report, Criminal Law,* 77 *N. J. L. J.* 408 (1954); *Proposed New Jersey Penal Code* Vol. I: *Report and Penal* Code, *pp.* 7–8;

Vol. II: *Commentary, pp.* 24–26 (1971); *cf. State v. Currie,* 41 *N. J.* 531, 546–547 (1964).

During the night of August 9, 1971 two State Troopers, while on patrol in Wrightstown, saw a yellow Ford van in an area known to be a hangout for narcotics users. They saw the defendant and Stanley Wesley standing next to an open door on the right side of the van. Its owner and driver, Larry Pesacreta, was in the van occupying the driver's seat. Apparently the defendant and Wesley saw the troopers and they walked hurriedly away. One of the troopers went after them while the other trooper observed a brown paper bag being thrown from the van by Pesacreta. The bag was retrieved and it was found to contain a total of 73.95 grams of marihuana and 18.44 grams of hashish. The trooper who went after the defendant and Wesley apprehended them and both were searched. Wesley had no narcotics on his person but the defendant had 2.89 grams of marihuana and .49 grams of hashish. *N. J. S. A.* 24:21–20 (a)(3) provides that one who violates its terms by possession of more than 25 grams of marihuana or more than 5 grams of hashish "is guilty of a high misdemeanor" and that one who violates by possession of 25 grams or less of marihuana or 5 grams or less of hashish "is a disorderly person."

The State proceeded on the theory that the marihuana and hashish in the bag thrown from the van was jointly possessed by Pesacreta and the defendant Saulnier. They were both named in a single indictment which charged, in count one, that they unlawfully possessed over 25 grams of marihuana and, in count two, that they unlawfully possessed over 5 grams of hashish. On motion, the two counts were consolidated into one count charging possession of the marihuana and hashish. Pesacreta pleaded guilty and the matter came on for trial against the defendant Saulnier who elected to waive a jury and proceed before the trial judge. At the close of the State's testimony, counsel for Saulnier moved to dismiss on the ground that the State had not es-

tablished that Saulnier was in joint possession of the narcotics with Pesacreta. The trial judge agreed and dismissed the high misdemeanor charge in the indictment. But instead of terminating the entire proceeding he ruled that he could proceed with trial of the issue of whether the defendant's possession on his person of the 2.89 grams of marihuana and the .49 grams of hashish rendered him a disorderly person under *N. J. S. A.* 24:21–20(a)(3). Defense counsel objected, urging that the defendant was never "on notice" that he was being charged as a disorderly person for the possession of the small quantities of narcotics allegedly found on his person; defense counsel also urged that under *McGrath, supra,* 17 *N. J.* 41, the trial judge could not convict the defendant of disorderly conduct as "a lesser included offense." These contentions were rejected and the defense then proceeded with its testimony which included a specific denial by the defendant that he possessed marihuana or hashish on his person as testified to by the trooper. The trial judge found the trooper's testimony to be credible and, as aforestated, found the defendant to be a disorderly person.

*State v. Maier,* 13 *N. J.* 235 (1953), held that our statute (*N. J. S. A.* 2A:170–26) declaring that one who commits a simple assault or assault and battery shall be a disorderly person rather than a misdemeanant is constitutional; accordingly a disorderly person complaint for simple assault and battery, filed against the defendant in the Municipal Court of Hoboken, was upheld for trial there. It was followed by *State v. McGrath, supra,* 17 *N. J.* 41 (see also *State v. Chiarello,* 17 *N. J.* 36 (1954)) where an indictment charging atrocious assault and battery, in one count, and simple assault and battery, in another count, was returned by the Hudson County Grand Jury and came on for trial in the Hudson County Court. The defendant waived trial by jury and the County Judge found him not guilty of atrocious assault and battery but guilty of simple

assault and battery. On appeal, this Court held that "the County Court was without jurisdiction" of the simple assault and battery charge and that consequently the defendant's conviction must be set aside. 17 *N. J.* at 53.

In support of its holding, the Court expressed the view that the Legislature, in downgrading simple assault and battery, contemplated that grand juries and upper courts would not be burdened with petty offenses (17 *N. J.* at 45) and that trial juries would not be subject to the "confusion" of having to pass on simple assaults and batteries, as lesser and included offenses, where the indictments charged atrocious assaults and batteries. (17 *N. J.* at 45–46). It additionally noted that a defendant charged with atrocious assault and battery could not be convicted of simple assault and battery in the County Court because that court "lacks jurisdiction" over a disorderly person offense which is not viewed in law as a crime. 17 *N. J.* at 52. Shortly after *Mc-Grath* was handed down, it was questioned by Professor Knowlton who pointed out that "jurors in many types of criminal cases must be instructed concerning lesser and included crimes" and that it was "highly unlikely that the jury's confusion would be accentuated by the fact that one is a crime and the other is not." 10 *Rutgers L. Rev.* at 98. He expressed the thought that *McGrath* might lead prosecutors to avoid seeking atrocious assault indictments except in "the most obvious cases" and that this might well disserve the public interest; and he expressed the further thought that it might operate unfairly to defendants who, though they may be acquitted of atrocious assault charges on the basis of credited evidence indicating innocence of both simple and atrocious assault, may nonetheless still be required under *McGrath* to face independent disorderly persons charges on the basis of the identical occurrences. Knowlton, *supra,* 10 *Rutgers L. Rev.* at 99; *cf.* Bigelow, "Former Conviction and Former Acquittal," 11 *Rutgers L. Rev.* 487, 504 (1957).

The common law doctrine that a defendant may be found guilty of a lesser offense necessarily included in the greater offense charged in the indictment is well recognized in our State. See *State v. Zelichowski*, 52 *N. J.* 377, 383–385 (1968); *State v. Midgeley*, 15 *N. J.* 574, 579 (1954); *State v. Staw*, 97 *N. J. L.* 349, 350 (*E. & A.* 1922); cf. *State v. Newman*, 128 *N. J. L.* 82, 84 (*Sup. Ct.* 1942); *State v. Johnson*, 30 *N. J. L.* 185, 186–187 (*Sup. Ct.* 1862); see also IV and V *Wharton's Criminal Law and Procedure*, §§ 1799 and 2131 (1957). It was originally designed to aid the prosecution so that it would not fail entirely where some element of the greater offense was not established. See *The People v. White*, 22 *Wend* 167, 176 (1839); *The People v. Jackson*, 3 *Hill* 92 (1842). But it also redounded to the benefit of the defense since it enabled a finding of lesser consequence (*cf. People v. Mussenden*, 308 *N. Y.* 558, 127 *N. Ed 2d* 551, 553 (1955)) and precluded a later independent prosecution of the lesser offense as double jeopardy. See *State v. Midgeley, supra*, 15 *N. J.* at 579–580; *State v. Di Giosia*, 3 *N. J.* 413, 419 (1950). Any additional procedural inconvenience it entailed in the trial itself was outweighed by the resulting higher measure of justice and the increased efficiency in judicial administration. *Cf.* Knowlton, *supra*, 10 *Rutgers L. Rev.* at 98–99.

The Model Penal Code embodies the common law doctrine with a delineation of its contours. Thus it provides that a defendant may be convicted of an included offense and specifies that an offense is to be viewed as included when: "(a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or (b) it consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein; or (c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public in-

terest or a lesser kind of culpability suffices to establish its commission." *Model Penal Code,* Proposed Official Draft (1962), § 1.07(4). The Code also provides that "The Court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Ibid.* § 1.07(5). The proposed New Jersey Penal Code embodies the common law doctrine as thus delineated with, however, an express direction that the doctrine shall be applicable "whether or not the included offense is an indictable offense." *The New Jersey Penal Code, supra,* Vol. I: *Report and Penal Code* § 2C:1-7(d). This quoted language was specifically designed towards superseding *McGrath.* See *The New Jersey Penal Code, supra,* Vol. II: *Commentary, pp.* 24-25.

The suggestion in *McGrath,* 17 *N. J.* at 45, that the Legislature contemplated that the grand jury would not be burdened with minor offenses has no pertinency to the doctrine of included offenses, for the grand jury in returning an indictment for the greater offense of atrocious assault and battery deals only with that major offense. The rest is a matter of trial procedure with no greater inconvenience than that which has been accepted as properly incidental to sound application of the doctrine in many other well recognized situations in the criminal law.

See *State v. Midgeley, supra,* 15 *N. J.* at 579; *State v. Johnson, supra,* 30 *N. J. L.* at 187-188; *State v. Magai,* 96 *N. J. Super.* 109, 114 *(Essex Cty. Ct.* 1967) ; *cf.* Knowlton, *supra,* 10 *Rutgers L. Rev.* at 98. Inconvenience is readily minimized by barring the assertion of error where no appropriate request for a suitable jury charge is made *(cf. Fuller v. United States,* 132 U. S. App. D. C. 264, 407 *F. 2d* 1199, 1230 (D. C. Cir. 1968), *cert. denied,* 393 *U. S.* 1120, 89 S. Ct. 999, 22 L. Ed. 2d 125 (1969)) and by adherence to the principle that there need not be a jury charge with respect to an included offense unless there is a rational basis

in the evidence for a finding that the defendant was not guilty of the higher offense charged but guilty of the lesser included offense. See *Model Penal Code, supra,* § 1.07(5); *People v. Mussenden, supra,* 308 *N. Y.* at 563, 127 *N. E. 2d* at 554; *cf. Sansone v. United States,* 380 *U. S.* 343, 349–350, 85 S. Ct. 1004, 13 *L. Ed. 2d* 882, 887–888 (1965); *Keeble v. United States,* 412 *U. S.* 205, 93 S. Ct. 1993, 36 *L. Ed. 2d* 844 (1973).

In *McGrath* the Court expressed the view that under *N. J. S. A.* 2A:3–4, which sets forth that the county court shall have cognizance of indictable offenses, the county court had no jurisdiction to find the defendant guilty of simple assault as a lesser included offense. But the Court did not consider the all-inclusive constitutional authority of the Superior Court to which the indictment for the greater offense is returned *(Const., Art.* VI, § 3, *para.* 2; *R. R.* 3:3–8; *R.* 3:6–8), nor did it consider the constitutional and statutory authority of the Chief Justice *(Const., Art.* VI, § 7, *para.* 2; *Art.* XI, § 4, *para.* 5; *N. J. S. A.* 2A:8–11) to assign, as he has by annual orders (see 94 *N. J. L. J.* 881 (1971); 95 *N. J. L. J.* 970 (1972)), county judges to the Superior Court and to the municipal courts. See *State v. Briley,* 53 *N. J.* 498, 504 n. 1 (1969). The present rules of court, duly adopted pursuant to *Const., Art.* VI, § 2, *para.* 3, provide in comprehensive fashion that not only the indictment itself but "all subsequent papers in connection therewith" shall be entitled in the Superior Court. *R.* 3:7–1.

In the light of the foregoing, the jurisdictional limitation expressed in *McGrath* has no current vitality. Whether the atrocious assault and battery indictment is tried by a Superior Court judge or a County Court judge it is to be dealt with, at least for jurisdictional purposes, as a Superior Court proceeding. In the course of the proceeding the common law doctrine of lesser included offenses is of course applicable and we find no sound reason for distinguishing between lesser included offenses which are indictable and those which are not. When the Legislature

downgraded simple assault and battery, and declared it to be disorderly conduct rather than a misdemeanor, it was not at all concerned with the doctrine of lesser included offenses. Nowhere in the course of the legislative process was there any suggestion that an exception was to be carved from the doctrine so as to preclude lesser included offenses which were not independently indictable. Indeed the policy considerations point the other way, for it is not only more efficient but more just to dispose of the entire matter with finality in a single proceeding in which the fact-finder may conscientiously determine whether the defendant is guilty or not guilty of atrocious assault and battery, and, if not guilty, whether he is guilty or not guilty of the lesser included offense of simple assault and battery. To the extent that this Court's holding in *McGrath* (17 *N. J.* 41) stands in the way it is now expressly overruled; and to the extent that its approach may have carried over into other areas of the criminal law·involving nonindictable lesser included offenses, it may be viewed as no longer viable. The overruling of *McGrath* is to be deemed prospective and to apply solely to future trials. And though *McGrath* is overruled, we expect that prosecutors will, as heretofore, conscientiously refrain from seeking indictments where the circumstances fairly and justly call only for disorderly persons proceedings in the municipal courts. *Cf.* Knowlton, *supra,* 10 *Rutgers L. Rev.* at 99; *State v. McGrath, supra,* 17 *N. J.* at 45.

With *McGrath* no longer in effect, it is clear that a person now charged ·with possession of more than 25 grams of marihuana or more than 5 grams of hashish, in violation of *N. J. S. A.* 24:21–20(a)(3), may properly be found not guilty of the high misdemeanor charged but guilty of the lesser included disorderly persons offense of possession of 25 grams of marihuana or 5 grams or less of hashish. But when the defendant Saulnier was charged and tried, *McGrath* was in effect and he could fairly rely on it. The indictment charged him with a high misdemeanor and in support the prosecutor took the position that

the defendant had joint possession with Pesacreta of the large quantities of narcotics which were thrown from the van. Apparently there had been no pretrial conference under *R.* 3:13–1 and no suggestion by the prosecutor that if he failed to establish the high misdemeanor charged he would in the course of the same proceeding seek a disorderly person conviction as a lesser included offense. Presumably he, along with defense counsel, had accepted *McGrath* as precluding such course.

At the close of the State's case, the trial judge ruled that, although he had determined that the State's evidence did not establish the high misdemeanor charged, he could nonetheless proceed with trial of the issue of whether the defendant was a disorderly person under *N. J. S. A.* 24:21–20(a)(3). There was no suggestion of any independent complaint or other formal procedure and the defendant's contention that he had never been placed on notice that he was being charged as a disorderly person was rejected. It seems to us that, considering the then viability of *McGrath,* the contention at that point was a sound one and should have been accepted. This was the view of the Appellate Division which set aside the defendant's conviction and, as we have already indicated, our grant of certification was not pointed toward that action but was designed to pass on *McGrath.* In view of all of the foregoing and the particular circumstances presented, we believe that the just course now is not to interfere with the setting aside of the conviction and accordingly the Appellate Division's judgment is:

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL, MOUNTAIN and SULLIVAN and Judge CONFORD—7.

*For reversal* —None.