889 A.2d 1102 (2006)
382 N.J. Super. 494
STATE of New Jersey, Plaintiff-Respondent,
v.
Darryl MILLER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 2005.
Decided January 27, 2006.
*1103 Dennis Wixted, Camden, argued the cause for appellant (Sufrin Zucker Steinberg Sonstein & Wixted, attorneys; Mr. Wixted, on the brief).
Laurie A. Corson, Assistant Prosecutor, argued the cause for respondent (Vincent P. Sarubbi, Camden County Prosecutor, attorney; Ms. Corson, of counsel and on the brief).
Before Judges LINTNER, PARRILLO and HOLSTON, JR.
The opinion of the court was delivered by
LINTNER, J.A.D.
Defendant, Darryl Miller, appeals from a judgment entered by the trial judge convicting him of the lesser-included disorderly persons offense of simple assault, N.J.S.A. 2C:12-1a, after the jury acquitted him on the indictable offenses and then was excused as deadlocked on the lesser-included *1104 disorderly persons offense. We reverse the judgment of conviction and remand for new trial.
We combine the procedural history and relevant facts. On February 1, 2002, defendant, a sergeant in the Camden Police Department, went to the home of Tina Edwards, his estranged girlfriend and the mother of his child, to visit the child and pay child support. At the time, Alkeena Wright and her daughter were visiting Edwards so that their daughters could play. When defendant arrived, he picked up his daughter, changed her diaper, and then asked Edwards if he could talk to her privately in the bedroom. Defendant was concerned about Edwards' relationship with Christopher Pugh, who defendant knew had a criminal record. Pugh had helped Edwards purchase a minivan by allowing title to be placed in his name even though she had paid for it.
After approximately five minutes, Wright heard Edwards scream, "get off of me" and "Alkeena, help." She also heard defendant holler, "Why you having my daughter around another man?" Alkeena entered the room and observed defendant straddling Edwards on the bed with his knees near her shoulders. She saw defendant hit Edwards "a couple of times" with an open hand. Wright told defendant to stop and he eventually left the bedroom and the apartment. Before leaving the apartment, defendant took keys to both the apartment and minivan. Wright saw defendant outside retrieving a piece of paper from the van and then heard him trying to turn the doorknob to the apartment. Edwards called the police. When the police arrived, both Wright and Edwards told them what had occurred. Edwards was taken to West Jersey Hospital where she was treated for facial and chest wall contusions and a superficial head injury. A videotape taken a day or two later by Pugh showed Edwards had developed a black eye and facial scratches.
On May 29, 2002, Edwards gave a taped statement to defense counsel, stating that she had lied to the police. Similarly, she explained to the Grand Jury that she had lied to Wright, Pugh, the police, and the hospital. She testified at trial that after she entered the bedroom an argument ensued and she attempted to strike defendant. She claimed that he grabbed her hands to calm her down and lost his balance, causing his head to strike her face as they both fell onto the bed. Defendant testified consistently with Edwards' recanted version. When defendant questioned Edwards about Pugh and the minivan, she suggested, "If you don't believe me Darryl, go downstairs and check the vehicle." After doing so, defendant returned to the apartment, knocked on the door, but left when he received no response. That night, at his supervisor's request, defendant went to headquarters where he was placed under arrest and charged. In addition to testifying, defendant presented several character witnesses on his behalf.
On September 25, 2002, a Camden County Grand Jury returned Indictment No. 3319-09-02, charging defendant with third-degree aggravated assault, N.J.S.A. 2C:12-1b(7), and third-degree attempted burglary, N.J.S.A. 2C:5-1 and 2C:18-2. The trial commenced on January 27, 2004, and was tried over a period of three days. At the conclusion of the evidence, the parties agreed that the trial judge would charge the jury on the lesser-included disorderly persons offense of simple assault, N.J.S.A. 2C:12-1a. The judge also granted defendant's request to instruct the jury on the petty disorderly persons offense of mutual fighting, if the jury returned a guilty verdict on simple assault, N.J.S.A. 2C:12-1a.
*1105 The jury began its deliberations on January 29, 2004, at 2:35 p.m. At 3:06 p.m., the jury sent a note asking whether it could have a copy of Wright's testimony and if there was any other evidence for it to examine. The judge explained that she could have Wright's testimony read back but suggested that the jury first consider whether there was any particular portion with which it was concerned. She also advised that there was no other tangible evidence for them to examine. At 3:48 p.m., the jury sought "Wright's testimony, all references about [Edwards] being struck. During direct, one or two blows, but during cross she didn't actually see." With the agreement of counsel, the judge instructed the court reporter to read back Wright's testimony as to everything she heard and saw until defendant left the apartment.
The jury resumed its deliberations at 9:20 a.m. the next day. At 12:23 p.m., the jury requested another read-back and the judge complied. Deliberations resumed at 1:02 p.m. At 2:47 p.m., the jury reported, in response to the judge's inquiry, that it had reached a verdict of not guilty on the charge of aggravated assault but could not reach an agreement on simple assault. The judge, with the consent of counsel, gave the jury a modified Czachor[1] charge. The jury resumed its deliberations at 3:03 p.m. and at 3:25 p.m. reported, "Almost immediately today, the jury reached two verdicts on the aggravated assault and the attempted burglary. For the past four-and-a half hours, we have deliberated on the simple assault charge, but we cannot reach a unanimous verdict."
The judge suggested to counsel that it was her belief that the jury should be considered "deadlocked on the simple assault" and they should take its verdict. Both parties agreed with the judge's assessment. The judge took and accepted the verdicts of acquittal on aggravated assault and attempted burglary and discharged the jury. One juror then asked what was going to happen with the simple assault charge and the judge advised that she would ask for briefs from counsel as to whether she should sit as the finder of fact and decide the simple assault charge or whether it should be remanded to be heard in municipal court.
The State moved to have the trial judge be the fact finder on the simple assault charge. Defendant countered, asserting that the matter should be remanded to municipal court and arguing that he would have tried the case differently had he known that a judge would be the trier of fact. On March 5, 2004, prior to oral argument on the motion, the judge acknowledged that the jury was deadlocked and that she had declared a mistrial. Relying on R. 1:1-2 and R. 3:15-3, the judge granted the State's motion to have her sit as the fact finder, concluding that it "promotes efficiency of adjudication and fairness to both sides." She also determined that defendant would not be prejudiced because she would be prepared to render a verdict without consideration of defendant's testimony if she were asked to do so and there was "no other demonstrable way in which the case would have been tried differently had the defense known that it would be ultimately a bench trial rather than a trial by jury." The judge then decided defendant was guilty beyond a reasonable doubt of simple assault, placing her findings of fact on the record. On March 8, 2004, the judge issued a written decision elucidating her legal conclusions.
On May 14, 2004, the judge denied defendant's motion to dismiss based on the argument that she rendered her decision outside the one-year statute of limitations, N.J.S.A. 2C:1-6b(2), and sentenced defendant *1106 to a one-year term of probation, with the requirement that he complete twenty days in the Sheriff's Labor Assistance Program, to be served on weekends, and receive batterer's counseling. Finally, the judge denied the State's motion to order that defendant forfeit public office, N.J.S.A. 2C:51-2a(2) and N.J.S.A. 2C:51-2d.
On appeal, defendant raises the following points:
I. FOLLOWING A JURY DEADLOCK ON A LESSER INCLUDED OFFENSE OF SIMPLE ASSAULT, IT WAS REVERSIBLE ERROR FOR THE COURT TO GRANT THE STATE'S REQUEST FOR A BENCH TRIAL ON THE DEADLOCKED CHARGE OVER THE OBJECTION OF THE DEFENDANT. THUS THE DEFENDANT'S CONVICTION FOR SIMPLE ASSAULT MUST BE REVERSED.
a) The Question of Jurisdiction.
b) The defendant was entitled to a jury trial to completion, or a new trial upon deadlock.
c) The Trial Court failed to consider and in fact ignored the implications of a "hung jury."
II. FOLLOWING THE JURY DEADLOCK, THE TRIAL COURT ERRED IN FAILING TO DISMISS THE DISORDERLY PERSON[S] CHARGE DUE TO A VIOLATION OF THE STATUTE OF LIMITATIONS UNDER N.J.S.A. 2C:1-6(d).
We address defendant's points in reverse order. Defendant argues that the judge erred in denying his motion to dismiss based upon the running of the one-year statute of limitations. "A prosecution for a disorderly persons offense must be commenced within one year after it is committed." N.J.S.A. 2C:1-6b(2). Defendant maintains that his motion to dismiss should have been granted because the State did not seek to "downgrade" the offense and, therefore, N.J.S.A. 2C:1-6(d), which tolls the statute of limitations on downgraded offenses, does not apply. Defendant's argument, however, fails to recognize the applicable statute, namely N.J.S.A. 2C:1-6(e), which states, "[t]he period of limitation does not run during any time when a prosecution against the accused for the same conduct is pending in this State." Under N.J.S.A. 2C:1-6(e), the one-year limitation period on the lesser-included offense of simple assault did not run during the time defendant was being prosecuted for the greater offense of aggravated assault.
We come to a different conclusion on defendant's contention that the judge erred in not affording him a new trial following the deadlocked jury verdict. A disorderly persons offense is not a crime and does not, when standing alone, afford the right to a jury trial. N.J.S.A. 2C:1-4b. However, where the proofs presented support inclusion of a disorderly persons offense as a lesser-included offense of an indictable offense, the lesser-included disorderly persons offense must be submitted for a jury determination. N.J.S.A. 2C:1-8(e); State v. Stanton, 176 N.J. 75, 114-15, 820 A.2d 637, cert. denied, 540 U.S. 903, 124 S.Ct. 259, 157 L.Ed.2d 187 (2003); State v. Muniz, 118 N.J. 319, 326, 571 A.2d 948 (1990); State v. Sloane, 111 N.J. 293, 303, 544 A.2d 826 (1988); see also R. 3:15-3(a)(2).
Defendant essentially contends that the mistrial resulting from the deadlocked jury rendered the trial a nullity, thus requiring a new trial in which the defense should be permitted to present whatever evidence it desires anew, regardless of whether or not it was presented in the prior trial. At oral argument on appeal, the State conceded that the deadlocked jury entitled defendant to a new trial but *1107 maintained that he was indeed given one by the trial judge when she decided the case anew based upon the evidence previously presented to the jury. "Absent defendant's consent or other justification, a trial commenced should proceed to conclusion before the chosen factfinder." State v. Lopez, 160 N.J.Super. 30, 38, 388 A.2d 1273 (App.Div.1978). The question thus presented is whether it is proper for a judge to consider a defendant's guilt based on the same record as that presented to the deadlocked jury.
Relying on Muniz, the State argues that the procedure used by the judge was appropriate. Muniz held that "lesser-included motor vehicle offenses, if supported by the evidence . . . should be joined in the prosecution of the Code offense of death by auto and, by appropriate instructions. . . brought to the attention of the jury. . . but determined by the judge." Muniz, supra, 118 N.J. at 332, 571 A.2d 948. The Court in Muniz, however, made it clear that the prosecution of offenses under the Criminal Code, including disorderly offenses, is both distinguishable and separate from motor vehicle violations. Ibid.
The State also maintains that the judge correctly relied on State v. Medina, 349 N.J.Super. 108, 793 A.2d 68 (App.Div.), certif. denied, 174 N.J. 193, 803 A.2d 1165 (2002), in determining, "no injustice resulted from a procedure where the Superior Court decides lesser included offenses, nor was the defendant `shortchanged.'" In Medina, however, the State downgraded the charges to a disorderly persons offense prior to trial, after which the Law Division held a bench trial. Id. at 115, 793 A.2d 68.
Unlike the circumstances in Medina and the death by auto cases, defendant here was not made aware that he would be facing a bench trial on the simple assault offense. Indeed, defendant's reasonable expectation was that a jury, not a judge, would determine his guilt on the lesser-included simple assault offense. "[A] mistrial caused by a jury deadlock `is not a judgment or order in favor of any of the parties' and `lacks the finality of a judgment, and means that the trial itself was a nullity.'" State v. Cruz, 171 N.J. 419, 426, 794 A.2d 165 (2002) (quoting State v. Hale, 127 N.J.Super. 407, 412, 317 A.2d 731 (1974)). "`The declaration of a mistrial renders nugatory all trial proceedings with the same result as if there had been no trial at all.'" Hale, supra, 127 N.J.Super. at 412, 317 A.2d 731 (quoting United States v. Mischlich, 310 F.Supp. 669, 672-73 (D.N.J.1970), aff'd sub nom. United States v. Pappas, 445 F.2d 1194 (3d Cir.), cert. denied, 404 U.S. 984, 92 S.Ct. 449, 30 L. Ed.2d 368 (1971)). Furthermore, "`[t]he parties are returned to their original positions and, at the new trial, can introduce new evidence and assert new defenses not raised at the first trial.'" Ibid. (quoting Mischlich, supra, 310 F.Supp. at 672-73).
At oral argument before the Law Division judge and before us, defense counsel gave several examples as to how he would have tried the case differently had he known that he was facing a bench trial rather than a jury trial. It would be speculative, at best, for us to decide whether counsel's strategic decisions would have been "demonstrably different" had he been given a bench trial rather than one by jury. We, however, have recognized "that as a practical matter the tactics employed in a jury trial may differ from those that would be used in a bench trial." Lopez, supra, 160 N.J.Super. at 38, 388 A.2d 1273. In our view, instead of granting a new trial, thus returning the parties to their original position as if no trial had taken place and allowing defendant to present evidence in a different manner, the trial judge essentially made herself the thirteenth *1108 juror and decided the case de novo on the evidence previously presented.
Judicial economy does not trump the right of a defendant to a new trial following an appropriately declared mistrial. See State v. Jenkins, 182 N.J. 112, 124, 861 A.2d 827 (2004) (judicial economy must bow to defendant's constitutional right to a fair trial); State v. Brown, 170 N.J. 138, 159-60, 784 A.2d 1244 (2001) (stating judicial economy cannot override a defendant's right to a fair trial). Moreover, our rules and statutes limit de novo review on the record to the following circumscribed situations: R. 1:20-15 (attorney disciplinary proceedings subject to de novo on the record review by the Disciplinary Review Board); R. 7:13-1 and R. 3:23-8 (Law Division review of municipal court decisions); R. 2:10-2 (de novo review on the record required for First Amendment issues); N.J.S.A. 40A:14-150 (review of police disciplinary proceedings); N.J.S.A. 40A:14-22 (review for disciplinary actions against firefighters); N.J.S.A. 40A:9-25 (conviction of county investigator in a county where Title 11A is not in operation subject to de novo on the record review by Superior Court); N.J.S.A. 2A:23A-13 (review of application to vacate dispute resolution award on certain grounds is de novo on the record).
We are satisfied that fairness and due process considerations require that defendant be afforded a new trial on the disorderly persons charge, albeit with a judge as fact-finder rather than a jury. Accordingly, we reverse the simple assault judgment of conviction and remand the same for new trial. We leave it to the Law Division to decide whether it should retain jurisdiction under R. 3:1-6(a) or remand the matter to Municipal Court for trial. Because the trial judge decided defendant's guilt and resolved both factual and credibility issues, if the Law Division retains jurisdiction, a different judge should be assigned to try the matter on remand. R. 1:12-1(d).
Reversed and remanded for new trial.
NOTES
[1] State v. Czachor, 82 N.J. 392, 413 A.2d 593 (1980).