943 A.2d 175 (2008)
399 N.J. Super. 86
STATE of New Jersey, Plaintiff-Respondent
v.
Hipolito RUIZ, Defendant-Appellant.
Docket No. A-5529-06T4.
Superior Court of New Jersey, Appellate Division.
Submitted February 5, 2008.
Decided March 12, 2008.
*178 Yvonne Smith Segars, Public Defender, for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).
Bruce J. Kaplan, Middlesex County Prosecutor, for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).
Before Judges SKILLMAN, WINKELSTEIN and LeWINN.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
A grand jury indicted defendant Hipolito Ruiz for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4a(1), for causing the death of fifteen-month-old Angel Sandoval. Following three days of deliberations, a jury acquitted defendant of aggravated manslaughter and was deadlocked on the unindicted lesser-included offense of reckless manslaughter. The trial court declared a mistrial and ordered that defendant could be retried for reckless manslaughter.
On leave to appeal, we are asked to decide whether defendant can be retried on the lesser-included offense after the jury acquitted him of the sole charge in the indictment. We conclude that he can, and hold that when a jury acquits a defendant of the offense charged in the indictment, retrial for a lesser-included offense on which the jury has been unable to agree is not constitutionally barred.
The trial produced the following evidence.
Nelida Molinary lived in Brooklyn with her children, including Sheila, who was eleven years old, and Angel Sandoval. Defendant lived in Carteret, New Jersey. He and Molinary had a dating relationship and occasionally stayed at each other's apartments. Molinary trusted defendant with her children; she had told a New York social service agency that he was good with them, especially with Angel.
On the weekend of April 2, 2005, Angel spent a night at defendant's apartment, along with defendant's one-year-old son, and defendant's stepson, Joseph. According to defendant, Angel sustained scratches on the side of his head and on his ear when he fell off the bed. Molinary testified that defendant told her that Angel had also run into a table that weekend. Joseph remembered Angel falling once, that he "was fine," and that Angel and Joseph's younger brother had been jumping on the bed and running around the house. Joseph said that Angel also had old bruises that appeared to be healing.
On Friday, April 8, 2005, defendant called out of work sick. Molinary took four of her children to school, leaving Angel and his brother Justin with defendant. Angel was active that day, playing, running, *179 and jumping with his sisters and brothers. Nevertheless, defendant saw Angel "dangling with his head on the stroller."
That night, Molinary's friends, Elizabeth D. and Tylor A., brought their daughter Kayla to her apartment. While they were there, defendant remained in the bedroom. After Kayla, who was two or three years old, bit Angel, Molinary put Angel in the bedroom with defendant, where they both fell asleep.
The next day, Angel spent most of the morning in the bedroom with defendant, but he also played with his siblings and ate his sandwich. Elizabeth testified, however, that Angel only sucked on the bread. While Molinary bathed Angel and changed his diaper, she did not see any marks on his body.
Around noon or 1 p.m., Molinary drove to her daughters' grandmother's house; defendant, Angel and two of Molinary's daughters went with her. In the car, Angel seemed tired and he lay down in the back seat. Defendant said Angel looked sick and drowsy that day, not running around as he normally did.
Later that afternoon, defendant drove to his apartment, accompanied by Sheila and Angel. During the ride, Angel was sleepy and cranky, and he had diarrhea and vomited, but did not cry. Angel "fell on his butt" three times while attempting to walk from the car to defendant's apartment building. Inside, while washing Angel, defendant saw marks on Angel's chest, and he noticed that Angel had a rash. Angel drank his bottle and went to sleep in defendant's bed.
While Sheila was in the living room, defendant, who was still not feeling well, lay down on his bed next to Angel and watched a movie. Defendant fell asleep and awoke multiple times. One time when he awoke, he noticed that Angel had diarrhea. Sheila testified that Angel had vomited again and she took him into the bathroom, where she removed his clothes and diaper to clean him. When she did, she saw marks on his knee and head and his skin color was turning yellow. He was taking "big gulps of air," and his eyes "rolled back and he just fell into [her] arms." At that point, she called for defendant to change Angel, who clenched his hands and started to shake.
Defendant called Molinary, and then either he or Sheila dialed 911. Defendant told the 911 dispatcher that Angel "wasn't breathing." The dispatcher gave defendant resuscitation instructions.
When Carteret police officer Phillip Esposito arrived at defendant's apartment, Angel was "shaking as if he [were] having a seizure," and "wheezing like he couldn't breathe." Esposito saw "a large number of bruises on [Angel's] legs, his abdomen, and his head." Defendant denied knowledge of the bruises. Esposito testified that defendant was "concerned for the health of the child."
Jennifer Brockop of the Carteret First Aid squad saw several bruises on Angel; his pulse was faint and he was not breathing. She also observed cuts on his lip and ear, with scabbing on the ear wounds. Some of his injuries appeared older than others. Efforts to revive Angel failed, and he was pronounced dead at approximately 9:15 p.m.
Investigator Todd Gerba spoke with Molinary, who had arrived from Brooklyn. She told him that Angel had a fever and bruising on his stomach and face before leaving Brooklyn. She believed the bruises might have been caused by the stroller accident the previous night.
Dr. Andrew Falzon, the medical examiner, performed an autopsy. He found abrasions *180 on Angel's hairline, right cheek, upper lip, right ear, left ear, and bruises on his head, abdomen, and shins. Angel's liver was lacerated, which caused him to bleed into his abdominal cavity. Dr. Falzon testified that the liver injury was consistent with a blow to the upper abdomen, and it was unlikely that it was caused by a "common fall." He opined that the injury could have been caused by a fist, a foot, an elbow, or by falling onto an object with a high degree of force.
Dr. Falzon opined that the injury was at least two hours old at the time of Angel's death, and that Angel was likely to have survived between four and six hours from the time he sustained the injury. The doctor also suggested that, having sustained this type of injury, Angel "would [have been] in severe pain and very irritable and crying." He then would have become less active before going into shock. In Dr. Falzon's opinion, Angel died of "intraperitoneal hemorrhage due to a laceration of the liver due to blunt force trauma to the abdomen," and the manner of death was homicide.
In August 2006, Investigator Gerba received a letter from Lawrence McLendon, an inmate at the Middlesex County Adult Correctional Center, where defendant was being held pending trial. The letter stated that defendant "identified himself as the murderer of Angel Sandoval." At trial, McLendon testified that defendant told him that he was charged with the "murder of a male," and that he "didn't do it." McLendon further testified that defendant told "four or five" other inmates, in an "aggressive, unremorseful, bragging" manner, that he "got a body," implying that he had killed someone. Defendant later told him that he spanked the baby to keep him from crying, and that he lay down next to the baby, but the baby became restless, so he "shot the baby an elbow." Defendant denied speaking to McLendon about Angel.
Dr. Douglas Miller, Professor of Neuropathology and Neurosurgery at New York University School of Medicine, testified as an expert for the defense. It was his opinion that Angel's fatal injury occurred between two and twelve hours before his death, and likely close to six hours preceding his death. He opined that an individual could not deliver enough force with his elbow to cause Angel's injury, but a kick could generate the requisite force. He testified that all of the bruising on Angel's body occurred within the last forty-eight hours of his life, and that it occurred within the same time frame as the liver laceration. He opined that Angel was "not struck just once." He testified that Angel's inability to walk at approximately 4:15 p.m. was consistent with a conclusion that he already had been injured.
After the close of the evidence, the trial court ruled, over defendant's objection, that it would instruct the jury to consider reckless manslaughter as a lesser-included offense of the charged crime, aggravated manslaughter. Accordingly, the court instructed the jury on the proper procedure to follow to consider the lesser-included offense.
The jury began deliberating on Thursday, May 10, and continued on May 11 and May 14. On the latter date, the jury submitted a note to the court stating that it was deadlocked. The court provided an appropriate supplemental charge and instructed the jury to continue its deliberations. See State v. Czachor, 82 N.J. 392, 405-07, 413 A.2d 593 (1980) (explaining jurors' duty to consult and deliberate). Later that day, the jury submitted a verdict in the form of a handwritten note, rather than on the verdict sheet the court had provided. The jury found that defendant was not guilty of aggravated manslaughter, *181 but it remained deadlocked on the reckless manslaughter charge. The note also stated: "Upon [f]urther examination of facts & testimony, each & every juror believe[s] we have made a sound, correct & final decision."
The court accepted the verdict acquitting defendant of aggravated manslaughter, declared a mistrial on reckless manslaughter, and subsequently ordered that the State could retry defendant for the latter offense. On appeal, defendant makes two primary arguments. First, he claims that the evidence did not support a reckless manslaughter charge as a lesser-included offense of aggravated manslaughter. Second, he asserts that a defendant cannot be retried on a lesser-included offense for which he was not indicted, if he is acquitted of the greater offense. We begin our discussion with whether the evidence supported the reckless manslaughter charge.

I
The New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-8d, codifies the common-law rule that an accused may be convicted of a lesser-included offense. State v. Stanton, 176 N.J. 75, 98-99, 820 A.2d 637, cert. denied, 540 U.S. 903, 124 S.Ct. 259, 157 L.Ed.2d 187 (2003). "A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense." N.J.S.A. 2C:1-8d. An offense is included when:
(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
. . . .
(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person . . . or a lesser kind of culpability suffices to establish its commission.
[N.J.S.A. 2C:1-8d.]
A lesser-included offense charge is warranted when (1) "the requested charge satisf[ies] the definition of an included offense set forth in N.J.S.A. 2C:1-8d, and (2) . . . there [is] a rational basis in the evidence to support a charge on that included offense." State v. Thomas, 187 N.J. 119, 131, 900 A.2d 797 (2006); see also N.J.S.A. 2C:1-8e (included offense should not be charged "unless there is a rational basis for a verdict convicting the defendant of the included offense"). "[A] rational basis in the evidence for a jury to acquit the defendant of the charged offense [is also necessary] before the court may instruct the jury on an uncharged offense." State v. Brent, 137 N.J. 107, 113-14, 644 A.2d 583 (1994).
Properly charged lesser-included offenses are constitutionally permissible. The New Jersey Constitution provides that "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury," N.J. Const. art. I, ¶ 8, and that "[i]n all criminal prosecutions the accused shall have the right . . . to be informed of the nature and cause of the accusation." N.J. Const. art. I, ¶ 10. To satisfy those constitutional provisions, the indictment must be specific, and must sufficiently inform the defendant to enable him to prepare his defense and avoid subsequent prosecutions for the same offense. State v. LeFurge, 101 N.J. 404, 415, 502 A.2d 35 (1986). Those constitutional considerations are satisfied when the requirements of N.J.S.A. 2C:1-8d are met. Brent, supra, 137 N.J. at 115-16, 644 A.2d 583.
Subject to those considerations, "a trial court has an independent obligation to instruct on lesser-included charges when *182 the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." State v. Jenkins, 178 N.J. 347, 361, 840 A.2d 242 (2004). That is what occurred here; the court, based on the trial evidence, determined that a reckless manslaughter charge was required. The record supports that decision.
"Criminal homicide constitutes manslaughter when . . . [i]t is committed recklessly[.]" N.J.S.A. 2C:11-4b(1). Aggravated manslaughter is a first-degree crime. N.J.S.A. 2C:11-4c; State v. Curtis, 195 N.J.Super. 354, 363, 479 A.2d 425 (App.Div.), certif. denied, 99 N.J. 212, 491 A.2d 708 (1984). In relevant part, aggravated manslaughter is criminal homicide occurring when "[t]he actor recklessly causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4a(1). To prove aggravated manslaughter, the State must establish that "the defendant was aware of and consciously disregarded a substantial risk of death, i.e., a probability that death would result, and that the defendant manifested extreme indifference to human life." State v. Cruz, 163 N.J. 403, 417, 749 A.2d 832 (2000) (citing N.J.S.A. 2C:11-4a). Simply stated, aggravated manslaughter requires conduct involving the probability of death. Curtis, supra, 195 N.J.Super. at 364, 479 A.2d 425.
Generally, reckless manslaughter is a lesser-included offense of aggravated manslaughter. State v. Warmbrun, 277 N.J.Super. 51, 60, 648 A.2d 1153 (App.Div. 1994), certif. denied 140 N.J. 277, 658 A.2d 300 (1995). A second-degree crime, reckless manslaughter is distinguishable from aggravated manslaughter "in the degree of the risk that death will result from defendant's conduct." Curtis, supra, 195 N.J.Super. at 364, 479 A.2d 425. For reckless manslaughter, the degree of risk is the "mere possibility" of death. Ibid. To distinguish between aggravated manslaughter and reckless manslaughter, "[t]he ultimate question for the factfinder is whether the homicide was committed under circumstances involving a mere possibility of death[,] or did the circumstances involve a probability of death. If the former, the verdict must be reckless manslaughter, but if the latter the verdict must be aggravated manslaughter." Id. at 365, 479 A.2d 425.
Here, the court had a rational basis to charge reckless manslaughter. Expert testimony showed that the injury causing Angel's death could have occurred while defendant was with Angel. Angel was killed by a blow to his abdomen. After spending time with defendant, Angel was found to have multiple bruises and cuts. McLendon testified that defendant admitted to striking Angel with his elbow. Thus, a jury could find that defendant killed the child. If a jury were to so find, it would then have to decide whether defendant killed Angel under circumstances reflecting either a probability or a possibility that Angel would die. See id. at 364, 479 A.2d 425. The record could support either conclusion.
Defendant testified that he thought of Angel as a son. Molinary testified that she trusted defendant with Angel. Officer Esposito testified that when he arrived at defendant's apartment, defendant was concerned for Angel's health. Dr. Miller opined that substantial force would have been necessary to cause Angel's fatal injury.
A jury could find that defendant struck Angel with his elbow to quiet him down, but did so without any intention or awareness that his actions would probably cause the child's death. Defendant was ill on the day of Angel's death; he had fallen asleep and awakened on a number of occasions, *183 and his awareness of the consequences of his actions may have been impaired. A jury could reasonably infer that although he struck Angel, he did so under circumstances indicative of a "mere possibility" of Angel's death, a lower degree of recklessness than that which is required for an aggravated manslaughter conviction. Thus, the court's decision to charge reckless manslaughter was not error.

II
We turn next to defendant's argument that he may not be retried on the reckless manslaughter charge. In its third day of deliberations, the jury acquitted defendant of aggravated manslaughter but was deadlocked on the reckless manslaughter charge. The court accepted the verdict and declared a mistrial on the latter charge. Defendant concedes that the court did not abuse its discretion in declaring a mistrial, but he argues that Rule 3:19-1, which permits a retrial after a jury is deadlocked, does not apply to the circumstances here.
Rule 3:19-1(a) says:
If there are 2 or more counts of an indictment or 2 or more defendants tried together, the jury may return a verdict or verdicts with respect to a defendant or defendants as to whom it has agreed, specifying the counts on which it has agreed; the defendant or defendants may be tried again on the count or counts as to which it has not agreed.
Defendant argues that the rule limits its applicability to situations involving two or more defendants, or two or more counts of an indictment; neither is the case here, where a sole defendant was charged with one count of a single-count indictment and was acquitted of that count. He claims that the rule cannot encompass the current situation because to retry him for a lesser offense that was never charged in the indictment would violate principles of double jeopardy. The State argues that the jury's inability to agree on the lesser-included offense should be treated as if that offense had been charged in the indictment, as defendant was on notice that he could be convicted of a lesser offense when charged with a greater offense.
Because we find no meaningful difference between a crime charged in an indictment and an unindicted lesser-included offense based on the trial evidence, we conclude that the rule does not preclude defendant from being retried for reckless manslaughter, the unindicted lesser-included offense, after the jury deadlocked on that offense but acquitted him of aggravated manslaughter, the indicted greater offense. To retry defendant under these circumstances does not violate principles of double jeopardy.
The Double Jeopardy Clause of the Fifth Amendment protects against "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." State v. Widmaier, 157 N.J. 475, 489-90, 724 A.2d 241 (1999); see U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"). The New Jersey Constitution provides that "[n]o person shall, after acquittal, be tried for the same offense." N.J. Const., art. I, ¶ 11. The New Jersey Supreme Court has interpreted the state and federal constitutional double jeopardy provisions to be coextensive. State v. Cruz, 171 N.J. 419, 425, 794 A.2d 165 (2002); Widmaier, supra, 157 N.J. at 490, 724 A.2d 241.
The constitutional bar does not, however, preclude "`retrial after a mistrial due to a deadlocked jury.'" Cruz, supra, 171 N.J. at 426, 794 A.2d 165 (quoting *184 State v. Abbati, 99 N.J. 418, 427, 493 A.2d 513 (1985)); State v. Snellbaker, 272 N.J.Super. 129, 135, 639 A.2d 384 (App. Div.1994). "[A] mistrial caused by a jury deadlock `is not a judgment or order in favor of any of the parties'. . . ." Cruz, supra, 171 N.J. at 426, 794 A.2d 165 (quoting State v. Hale, 127 N.J.Super. 407, 412, 317 A.2d 731 (App.Div.1974)).
Whether a defendant can be retried following a mistrial implicates notice and due process considerations, which are the sources of the constitutional protections that determine the sufficiency of criminal indictments. LeFurge, supra, 101 N.J. at 414-15, 502 A.2d 35. Because those protections are met as long as the elements of N.J.S.A. 2C:1-8d are satisfied, instructing a jury on a non-indicted lesser-included offense satisfies those notice and due process concerns. Brent, supra, 137 N.J. at 115-16, 644 A.2d 583 (constitutional concerns are satisfied by a lesser-included offense: "`[a] defendant is presumed to have notice that he may be convicted of any offense included in the offense charged'") (quoting Model Penal Code and Commentaries, § 1.07 cmt. at 130 n. 111 (Official Draft and Revised Comments 1985)). In other words, whether a defendant is indicted for a specific crime, or that crime is included as a lesser offense of the indicted charge based on the evidence, the defendant is in a position to adequately prepare his defense, satisfying constitutional notice and due process considerations. Consequently, a lesser-included offense based upon the trial record is the constitutional equivalent of an indicted lesser offense.
Although the New Jersey Supreme Court has never directly confronted whether a defendant can be retried for an unindicted lesser-included offense after being acquitted of the indicted greater offense, it has, in another context, found no distinction "between lesser included offenses which are indictable and those which are not." State v. Saulnier, 63 N.J. 199, 207, 306 A.2d 67 (1973). In Saulnier, the defendant was charged in a single indictment with two counts: misdemeanor offenses of possession of over twenty-five grams of marijuana and more than five grams of hashish. Id. at 202, 306 A.2d 67. The charges were consolidated into one count, charging possession of marijuana and hashish, and tried without a jury. Ibid. At the close of the State's case, the court dismissed the misdemeanor charge; the case proceeded and the court convicted the defendant of the lesser disorderly persons offense of possession of twenty-five grams or less of marijuana and five grams or less of hashish. Id. at 202-03, 306 A.2d 67.
On appeal, the Supreme Court was called upon to determine whether the defendant could be found guilty of the uncharged lesser offense. Id. at 205, 306 A.2d 67. In that context, the Court found "no sound reason for distinguishing between lesser included offenses which are indictable and those which are not," as long as they were included in the greater offense that had been charged in the indictment. Id. at 207, 306 A.2d 67.
Another panel of this court has implicitly concluded that a defendant can be retried on an unindicted lesser offense after being acquitted of the greater offense. State v. Miller, 382 N.J.Super. 494, 497, 889 A.2d 1102 (App.Div.2006). There, the defendant was indicted for third-degree aggravated assault and third-degree attempted burglary. Id. at 498, 889 A.2d 1102. A jury acquitted the defendant of the indicted charges, but deadlocked on the unindicted lesser-included offense of disorderly persons simple assault. Id. at 499, 889 A.2d 1102. On the State's motion, the court ruled that it would be the factfinder *185 as to the simple assault charge, and then it decided that the defendant was guilty. Id. at 500, 889 A.2d 1102. On appeal, the issue was whether it was proper for the court to consider the defendant's guilt based on the record presented to the deadlocked jury. Id. at 502, 889 A.2d 1102. We determined that the trial judge made herself the "thirteenth juror," and we remanded for retrial on the lesser-included disorderly persons offense. Id. at 503-04, 889 A.2d 1102. Whether the defendant could be retried for a lesser-included offense of the indicted offense for which he had been acquitted was not an issue in the case.
Courts in other jurisdictions that have directly addressed the question have held that the jury's acquittal on the indicted offense and deadlock on the unindicted lesser offense does not bar retrial of the lesser offense under constitutional double jeopardy principles. See, e.g., United States v. Gooday, 714 F.2d 80, 82-83 (9th Cir.1983), cert. denied, 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 884 (1984); State v. Russell, 101 Wash.2d 349, 678 P.2d 332, 335 (1984); Stone v. Superior Court, 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809, 822 (1982).
The Stone decision is instructive. California's statutory scheme provided the prosecution with the discretion to charge a lesser offense and a greater offense in separate counts, but it also allowed the prosecutor to simply charge the greater offense, which was the usual practice. Stone, supra, 183 Cal.Rptr. 647, 646 P.2d at 818. In California, like here, if the jury renders a verdict as to some indicted charges, and is unable to agree on a verdict on others, the defendant may be retried on the deadlocked charges. Id. at 819.
The defendant in Stone was charged with murder. Id. at 812. The jury was instructed both on first- and second-degree murder, as well as voluntary and involuntary manslaughter as unindicted lesser-included offenses. Ibid. The jury acquitted the defendant of the murder charges, and deadlocked on the unindicted charges. Id. at 813. After the trial court declared a mistrial, the California Supreme Court found no prohibition against retrying the defendant on the unindicted charges. Id. at 819. The court reasoned:
For the purpose of delineating the scope of the double jeopardy protection, we believe the situation before us to be logically indistinguishable from the case in which a greater offense and a lesser included offense are charged in separate counts. It would be anomalous to formulate a rule that prevents a trial court from receiving a partial verdict on a greater offense on which the jury clearly favors acquittal merely because the prosecutor elected to charge only that offense, and left it to the court to instruct on any lesser included offense supported by the evidence. . . . [S]uch a rule would make [the defendant's] substantive rights turn on the formality of whether he was charged in separate counts with the greater offense and the lesser included offense, or was charged in a single count with only the greater offense.
[Ibid.]
The court declined "to perpetuate the artificial distinction that has developed between expressly charged and impliedly charged lesser included offenses." Ibid.
Federal courts have taken similar positions. In Gooday, supra, 714 F.2d at 81, the defendant appealed from a pretrial order denying his motion to dismiss a pending indictment on double jeopardy grounds. He had been tried under a one-count indictment for first-degree murder, and at his request, the jury had been *186 instructed on the lesser-included offenses of second-degree murder and voluntary and involuntary manslaughter. Ibid. He was acquitted of first-degree murder, but the jury was unable to reach a verdict on the lesser-included offenses. Ibid.
Following a mistrial, the defendant appealed from the court's decision to permit him to be retried on the lesser-included offenses. Ibid. Affirming, the circuit court observed that a count in an indictment is not limited to the charges explicitly set forth in the count, but also includes lesser offenses. Id. at 82. The court reasoned that "lesser included offenses should be treated as if they had been specified in separate counts of the indictment" for purposes of retrial if a defendant is acquitted on the indicted charge and the jury is unable to decide if the defendant was guilty of the lesser-included offenses. Id. at 83; see also Green v. United States, 355 U.S. 184, 190 n. 10, 78 S.Ct. 221, 225, 2 L.Ed.2d 199, 205 (1957) (in determining that a defendant whose conviction for a lesser-included offense was reversed could not be retried for the greater offense, the Court found no difference between a charge in an indictment and a charge based on the evidence as a lesser-included offense, and that "[t]he constitutional issues at stake . . . should not turn on the fact that both offenses were charged to the jury under one count").
The reasoning in these cases supports our conclusion that no meaningful constitutional distinction exists between a charged lesser offense and a lesser-included offense for which there exists a rational basis in the evidence. A defendant charged with a greater offense is on notice that he may be convicted of a lesser-included offense. Brent, supra, 137 N.J. at 116, 644 A.2d 583. The included offense statute, N.J.S.A. 2C:1-8d, satisfies New Jersey constitutional protections relating to presentment and indictment before a grand jury. Ibid.
Defendant claims that our decision in Snellbaker, supra, 272 N.J.Super. 129, 639 A.2d 384, and the New Jersey Supreme Court's decision in State v. Shomo, 129 N.J. 248, 609 A.2d 394 (1992), bar retrial when a jury is hung on a lesser offense that was not charged in the indictment. In Snellbaker, supra, we declined to address whether a distinction exists between a lesser offense charged in an indictment and a lesser-included offense that was not. 272 N.J.Super. at 137 n. 3, 639 A.2d 384. It is therefore not instructive. The Supreme Court's decision in Shomo, however, requires some discussion.
Defendant points to the following language in Shomo, supra, to support his argument that retrial of the lesser-included offense after a jury acquits on the greater offense is precluded:
Moreover, partial verdicts may, under certain circumstances, implicate principles of double jeopardy. See Pressler, supra, comment on R. 3:19-1 (noting that double jeopardy prohibits retrying a defendant on lesser-included offense if jury does not agree on that offense but renders verdict on greater offense). Accordingly, for a partial verdict to be valid the court must ensure that a defendant's rights have not been compromised.
[129 N.J. at 257, 609 A.2d 394.]
The language of the comment to which the Shomo Court refers reads as follows:
[T]he defendant's right not to be placed in double jeopardy is no more violated if he is retried on a count of a single indictment as to which the jury has not agreed although it has reached a verdict on other counts  provided, however, that the count as to which there is no agreement does not charge a lesser included *187 offense vis-à-vis the count on which there is agreement.

[Pressler, supra, comment on R. 3:19-1 (2008) (emphasis added).]
We conclude that Shomo is distinguishable, and the cited language was dicta, which we choose not to follow.
In Shomo, supra, the defendant was tried on four counts of a five-count indictment. 129 N.J. at 251, 609 A.2d 394. After deliberations began, the jury informed the court that it reached a verdict on counts one and two, and was unable to reach a verdict on counts three and four. Id. at 251-52, 609 A.2d 394. The court took the partial verdict, guilty on the first count and not guilty on the second count, and deliberations continued; the jury ultimately found the defendant not guilty on the third and fourth counts. Id. at 252-53, 609 A.2d 394.
On appeal, the issue in Shomo was the validity of the partial interim verdict. Id. at 251, 609 A.2d 394. The Supreme Court held that Rule 3:19-1(a) permitted trial courts to take partial verdicts to specific counts of a multi-count indictment, and that an interim partial verdict may be considered final when received in open court, recorded, and confirmed by polling the jurors if requested. Id. at 254, 259, 609 A.2d 394. Nevertheless, the Court invalidated the interim verdict primarily because the trial court failed to instruct the jury on the effect of the verdict. Id. at 259-60, 609 A.2d 394.
Shomo is distinguishable from the case at hand. Unlike here, the jury in Shomo was not deadlocked on an unindicted lesser-included offense. Indeed, the jury in Shomo was not instructed to consider an unindicted lesser offense. Nor was double jeopardy an issue in Shomo. The issue was whether the trial court properly accepted the interim verdict. Id. at 259, 609 A.2d 394. That issue is not present here, where there was no interim verdict. Consequently, because the issues in Shomo did not implicate an unindicted lesser offense or double jeopardy principles, the Supreme Court's observation, that the comment to Rule 3:19-1 stands for the proposition that a defendant may not be retried for an unindicted lesser offense if the defendant is acquitted of the greater offense, was not essential to its determination. It constitutes dicta, and is not binding on this court, particularly under the dissimilar facts of this case. See Woodhull v. Manahan, 85 N.J.Super. 157, 167, 204 A.2d 212 (App.Div.) ("mere dictum" need not be followed), rev'd on other grounds, 43 N.J. 445, 205 A.2d 441 (1964); Black's Law Dictionary 1100 (7th ed. 1999) (defining obiter dictum as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential").

III
Finally, we address defendant's remaining argument, that principles of fundamental fairness should prevent his retrial for reckless manslaughter. Fundamental fairness is "an integral part of the right to due process." Abbati, supra, 99 N.J. at 429, 493 A.2d 513. It applies so as to avoid the "anxiety, vexation, embarrassment, and expense to the defendant of continual reprosecution where no new evidence exists." Id. at 430, 493 A.2d 513. A court may dismiss an indictment based on fundamental fairness principles "after successive juries have failed to agree on a verdict when it determines that the chance of the State's obtaining a conviction upon further retrial is highly unlikely." Id. at 435, 493 A.2d 513. Factors to be considered include: "(1) the number of prior mistrials and the outcome of the juries' deliberations . . .; (2) the character of prior *188 trials in terms of length, complexity, and similarity of evidence presented; [and] (3) the likelihood of any substantial difference in a subsequent trial." Ibid.; see also Cruz, supra, 171 N.J. at 430, 794 A.2d 165.
Here, defendant has been subject to one mistrial. It would be speculation to assume that a subsequent trial on reckless manslaughter would yield the same result; the evidence at the first trial could have supported a conviction or an acquittal for that offense. Nor do we know how the jury voted on that charge at the time it agreed to acquit defendant of aggravated manslaughter. Under these circumstances, fundamental fairness principles do not preclude a retrial.
Affirmed.